**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | No. 1:20-cv-02581 |
| v. | Hon. Matthew F. Kennelly |
| GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

Matthew R. Kipp
William E. Ridgway
Andrew J. Fuchs
Jennifer H. Berman
Laura Bernescu
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
matthew.kipp@skadden.com
william.ridgway@skadden.com
andrew.fuchs@skadden.com
jennifer.berman@skadden.com
laura.bernescu@skadden.com

*Counsel for Defendants*

January 13, 2021

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................2

I.      Plaintiff Improperly Engages in Puzzle Pleading. ..............................................................2

II.     Plaintiff Fails to Plead Falsity. ..........................................................................................3

         A.     Plaintiff Fails to Plead That Defendants' Statements of Fact Were False or Misleading at the Time They Were Made. ..........................................................3

               1.     Q2 2019 Earnings Announcement ................................................................3

               2.     Q3 2019 Earnings Announcement ................................................................6

               3.     December 11, 2019 Barclays Conference ......................................................8

         B.     Defendants' Forward-Looking Statements Are Inactionable. ................................8

         C.     Defendants' Statements of Opinion and General Optimism Are Inactionable....................................................................................................11

         D.     Plaintiff Fails to Plead a Violation of Item 303. ...................................................11

III.     Plaintiff Fails to Plead Scienter.......................................................................................12

IV.     Plaintiff Fails to Plead Loss Causation. ...........................................................................14

CONCLUSION....................................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Anderson v. Abbott Laboratories,*
140 F. Supp. 2d 894 (N.D. Ill. 2001) .............................................................................5, 7

*In re Apple Securities Litigation,*
Nov. 19 Civ. 2033, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020).......................................4

*Asher v. Baxter International Inc.,*
377 F.3d 727 (7th Cir. 2004)...............................................................................................9

*Conlee v. WMS Industries,*
No. 11 C 3503, 2012 WL 3042498 (N.D. Ill. July 25, 2012) .............................................2

*City of Livonia Employees' Retirement System & Local 295/Local 851, IBT v. Boeing Co.,*
711 F.3d 754 (7th Cir. 2013) .......................................................................................12, 14

*Davis v. SPSS, Inc.,*
385 F. Supp. 2d 697 (N.D. Ill. 2005) ................................................................................13

*Fryman v. Atlas Financial Holdings, Inc.,*
462 F. Supp. 3d 888 (N.D. Ill. 2020) ................................................................................13

*Gallagher v. Abbott Laboratories,*
269 F.3d 806 (7th Cir. 2001) ..............................................................................................5

*In re Harley-Davidson, Inc. Securities Litigation,*
660 F. Supp. 2d 969 (E.D. Wis. 2009)...............................................................................13

*Higginbotham v. Baxter International Inc.,*
495 F.3d 753 (7th Cir. 2007) .......................................................................................12, 14

*Menzies v. Seyfarth Shaw LLP,*
943 F.3d 328 (7th Cir. 2019) ............................................................................................15

*In re Midway Games, Inc. Securities Litigation,*
332 F. Supp. 2d 1152 (N.D. Ill. 2004) ..............................................................................10

*Pension Trust Fund for Operating Engineers v. Kohl's Corp.,*
895 F.3d 933 (7th Cir. 2018) ............................................................................................13

ii

*Ray v. Citigroup Global Markets, Inc.*,
    482 F.3d 991 (7th Cir. 2007) ...................................................................................................15

*Rochester Laborers Pension Fund v. Monsanto Co.*,
    883 F. Supp. 2d 835 (E.D. Mo. 2012)...................................................................................10

*Ross v. Career Educ. Corp.*,
    No. 12 C 276, 2012 WL 5363431 (N.D. Ill. Oct. 30, 2012) ................................................13

*Twin Master Fund, Ltd. v. Akorn, Inc.*,
    No. 19 C 3648, 2020 WL 564222 (N.D. Ill. Feb. 5, 2020)....................................................4

## STATUTES AND REGULATIONS

17 C.F.R. § 240 ...........................................................................................................................5

15 U.S.C. § 78u-5 .....................................................................................................................10

**INTRODUCTION**

Plaintiff's theory of securities fraud conflates Select, an early-stage membership program involving well under 1% of Groupon's customer base, with a full-year earnings miss. Defendants demonstrated in their Opening Brief why Plaintiff's theory is illogical and not supported by the facts pled. Plaintiff's Opposition further highlights the Complaint's dispositive flaws.

As an initial matter, the Complaint improperly engages in "puzzle pleading," failing to couple each allegedly misleading statement with specific, contradictory information known by the Defendant who made it. His Opposition offers no further clarity. This failure is grounds for dismissal in its own right.

Setting aside his pleading tactics, Plaintiff fails to identify any statements that were false or misleading when made. The Opposition attempts to juxtapose Groupon's Class Period statements with disclosures at the end of that period, but it never actually articulates any inconsistency among them. Plaintiff also ignores Groupon's (i) repeated Class Period statements about the small scope and experimental nature of Select, and (ii) warnings on July 30 and November 5, 2019, that the marketing costs for Select and other experimental initiatives could *adversely* affect full-year financial results. Moreover, as made clear from the statements quoted in the Complaint, Groupon never discussed during the Class Period how Select purchases were indexing, whether to Goods, Local, or Travel, nor did it have any duty to do so.

Additionally, the Opposition fails to identify any motivation for Defendants to mislead the market. Plaintiff admits that he cannot point to any tangible benefits that would have enticed Defendants to commit fraud. Plaintiff asserts only that Defendants had the incentive to delay the disclosure of negative information in the hope that positive developments might intervene. But without more, courts routinely have rejected scienter theories based on allegations that executives were motivated to delay the disclosure of negative information that was bound to come to light.

Finally, the Opposition fails to show that the Complaint adequately pleads loss causation. Plaintiff identifies no statements about Select or Goods that could have artificially inflated Groupon's stock price at the start of the Class Period on July 30, 2019. Indeed, Plaintiff does not allege *any* statements about Goods on that date. He also does not plausibly allege that Groupon's stock price fell 44% at the end of the Class Period on February 19, 2020, merely as a result of the announcement that Groupon would continue Select, but discontinue new enrollments.

These deficiencies are all pleading failures, not fact issues as Plaintiff contends. Based on his own allegations, Plaintiff fails to plead the required elements of his claims.

## ARGUMENT

### I.    Plaintiff Improperly Engages in Puzzle Pleading.

As shown in Defendants' Opening Brief, the Complaint employs "puzzle pleading," a tactic that numerous courts in this district have held violates the PSLRA's pleading requirements and alone supports dismissal. (*See* Br. 6-7.) The Opposition offers no meaningful response.

Plaintiff states in conclusory fashion that the Complaint should not be dismissed because it "specifies the who, what, when, and where concerning each false and misleading statement," as is required under Federal Rule of Civil Procedure 9(b). (Opp. 6.) But "[o]n top of the special burden imposed by [Rule 9(b)] . . . the PSLRA requires that the complaint 'specify *each* statement alleged to have been misleading, *[and] the reason or reasons why the statement is misleading.*' Further . . . the 'complaint shall, with respect to *each* [allegedly fraudulent] act or omission . . . *state with particularity facts giving rise to a strong inference*'" of scienter. *Conlee v. WMS Indus.*, No. 11 C 3503, 2012 WL 3042498, at *3 (N.D. Ill. July 25, 2012) (quoting 15 U.S.C. § 78u-4(b)(1), (2) (emphases added)). The Complaint fails to satisfy this additional burden.

Contrary to Plaintiff's assertion, the mere fact that the Complaint is "organized into [] sections" and "bold[s]" certain statements does not suffice to overcome the defects in Plaintiff's

2

pleading style. (Opp. 6.)[1] Each of the cases cited in the Opening Brief involved complaints with similar organization that were dismissed because they failed to couple each allegedly misleading statement with specific, contradictory information known by the defendant who made it. (*See* Br. 6-7.) The Complaint is similarly flawed, and should be dismissed on that ground alone.[2]

## II.    Plaintiff Fails to Plead Falsity.

Even if the Court were to ignore Plaintiff's impermissible puzzle pleading, it should dismiss the Complaint because it fails to identify any actionable misleading statements or omissions made during the three public events that it references. Plaintiff fails to allege that any of Defendants' statements of then-existing fact were false or misleading at the time they were made. And Plaintiff cannot premise his fraud claims on the forward-looking statements in the Complaint because they all were reasonable when made and accompanied by meaningful cautionary language, thereby qualifying for protection under the PSLRA's safe harbor. Nor can Plaintiff state a claim based on Defendants' statements of opinion or other vague statements of optimism, which routinely are deemed immaterial as a matter of law. Finally, Plaintiff fails to allege a violation of Item 303. These flaws, too, warrant dismissal.

### A.    Plaintiff Fails to Plead That Defendants' Statements of Fact Were False or Misleading at the Time They Were Made.

#### 1.    Q2 2019 Earnings Announcement

Plaintiff alleges that Select did not begin to over-index to Goods until the "second half of 2019," *after* the second quarter closed. (Opp. 10.) Defendants could not have committed fraud by

---

[1]    Plaintiff even bolds statements made by analysts, not by Defendants. (*See, e.g.*, ¶¶32, 71, 80, 153.)

[2]    Plaintiff argues that Defendants' "statement-by-statement" analysis "show[s] that the [Complaint] is not a 'puzzle pleading.'" (Opp. 6 n.4.) Not so. Defendants' analysis demonstrates that *no* statement quoted in the Complaint could give rise to a securities fraud claim—including those that are not bolded, which Plaintiff now suggests are not at issue. This does not imply that Plaintiff's falsity allegations are sufficiently specific under the PSLRA's pleading requirements, which provide an independent basis for dismissal.

omitting information that did not exist. Plaintiff nonetheless argues that because the Q2 2019 earnings announcement occurred in July 2019, "it is reasonable to infer" that Select was over-indexing by then. (Opp. 11.) But under the PSLRA's heightened pleading requirements, Plaintiff must plead his falsity allegations—including the timing of events that allegedly rendered later statements false—with particularity, meaning with "precision and 'some measure of substantiation.'" *Twin Master Fund, Ltd. v. Akorn, Inc.*, No. 19 C 3648, 2020 WL 564222, at *4 (N.D. Ill. Feb. 5, 2020) (citations omitted). His attempt to concoct a fraud claim dating back to July 2019 based on information he only imprecisely alleges emerged sometime during the "second half of the year" does not satisfy this heightened pleading standard.[3]

*In re Apple Securities Litigation*, No. 19-cv-2033, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020), on which Plaintiff heavily relies, is inapposite. *Id.* at *6 n.4 (noting at the motion to dismiss stage "that each case must be considered on its own facts"). There, the plaintiff alleged that Apple's November 1, 2018 statement that it was not experiencing pressure in the Chinese market was false because Apple later admitted that the Chinese economy had "beg[un] to slow in the second half [of 2018]," and that Apple's retail traffic had contracted "as [2018's final] quarter went on." *Id.* at *6. The plaintiff alleged that Apple had moved marketing staff to sales in a "fire drill" as early as October 2018 (*before* the November statement was made), cut certain production lines four days after the statement was made, and reduced its production by 30% eight days after that, suggesting that the negative information was known in advance of these dates. *Id.* The court found these collective allegations sufficient to support a falsity claim for a narrow class period of just *two* months, from November 1, 2018 to January 2, 2019. *Id.* at *1, *6. Here, by contrast, Plaintiff has

---

3    Defendants explained in the Opening Brief that the allegations regarding the Q2 2019 earnings announcement against Ms. Thomas, who was not interim CFO at the time, "must be dismissed against her for that reason alone." (Br. 8 n.3.) Plaintiff offers no response in the Opposition.

not alleged *any* facts to suggest that Select was over-indexing to Goods on July 30, 2019, let alone that this information was known by management at the time. (*See* Opp. 11.)

Even if Select had been over-indexing to Goods as of July 30, 2019, Groupon had no duty to disclose that fact. Disclosure is required only when necessary "to make [the] statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b); *see Gallagher v. Abbott Labs.*, 269 F.3d 806, 808 (7th Cir. 2001) ("[F]irms are entitled to keep silent (about good news as well as bad news) unless positive law creates a duty to disclose."). "Merely mentioning a topic . . . does not require the company to disclose every tangentially related fact . . . . [O]mitting smaller details, even if investors might care about them, is not necessarily misleading." *Anderson v. Abbott Labs*, 140 F. Supp. 2d 894, 903-06 (N.D. Ill. 2001) (dismissing claims where statements made did not implicate allegedly omitted information).

Here, the omission of information about Select's indexing behavior could not have rendered misleading any of Defendants' statements about Select, particularly when read in context. Plaintiff admits that when announcing Select, Defendants stated that it was a "new" program, with 150,000 members (0.32% of Groupon's 46.2 million customers), and still in its early "testing" phase, meaning its future was uncertain and subject to change based on learnings from the testing. (¶¶27, 68, 71, 73.) Defendants never stated that Select would boost 2019 earnings (which would have been illogical given its size); to the contrary, they stated that Groupon's financial results "may be adversely impacted in the near term" due to Select's marketing costs. (¶73.) Read alongside these disclosures, none of Defendants' statements during the Q2 2019 earnings announcement could have been rendered misleading by the omission of Select's performance details.

Moreover, Groupon never suggested that Select's tendency to over-index to Goods was a negative indicator for Select or Groupon's business as a whole, such that the alleged omission of

that information would render positive statements regarding Select or Groupon's performance misleading. (*See* Br. 17.) Select's tendency to index toward Goods only became relevant once Groupon decided to exit Goods, which, as Plaintiff himself alleges, did not occur until "midway through the fourth quarter," at the earliest. (¶107.)

### 2. Q3 2019 Earnings Announcement

Plaintiff argues that Defendants' statements made in connection with Groupon's Q3 2019 earnings announcement on November 4, 2019, were misleading because they did not disclose that (i) Select was over-indexing to Goods and (ii) Groupon was not competing effectively in Goods and thus would be exiting that segment. (Opp. 8-10.) These arguments suffer from similar flaws.

*First*, Plaintiff's allegations as to any omission concerning Select's indexing behavior are temporally flawed. The Complaint does not allege that Select had begun over-indexing to Goods as of November 4, 2019; it alleges only that this occurred at some point "during the 'second half of 2019.'" (¶¶82, 84.) And while Plaintiff points to "the fact that Groupon enacted a 15% discount on all Select members' Goods purchases starting in August 2019"—which he contends "yields the reasonable inference" that Select was over-indexing to Goods at that time—that allegation hurts, rather than helps, Plaintiff. (Opp. 10.) If Select truly was over-indexing to Goods in August 2019, and if that tendency was putting pressure on Groupon's bottom line, enacting a discount on Goods purchases to which Select members already disproportionately "gravitated" would only "exacerbate[]" those problems. (*Id*.) This allegation actually suggests that Select was not over-indexing to Goods as of November 4, 2019.[4]

---

[4]    These same temporal flaws doom Plaintiff's allegation that Groupon's full-year adjusted EBITDA guidance was "not achievable" as of November 4, 2019 (¶89), and that Groupon's reaffirmation of that guidance was therefore misleading. (*See* Br. 19-20.) The Opposition does not address this issue. Even more glaringly, Plaintiff fails to address how Select's tendency to over-index to Goods could have possibly had an earnings impact that would have warranted a revision to Groupon's full-year guidance on November 4, 2019, when only 0.57% of Groupon's customers were enrolled in Select at that time.

*Second*, Plaintiff's allegation that Defendants failed to disclose Groupon's increased competition and resulting declines in Goods is contradicted by the Complaint itself. (*See* Br. 16.) Plaintiff's reliance on *Apple* to suggest that "it is reasonable to infer that Defendants were aware of Goods' travails by November 4, 2019," thus is a non-sequitur. (Opp. 9.) And Plaintiff cannot argue that Defendants should have disclosed a decision to exit Goods on November 4, 2019, because the Complaint does not allege that Groupon had made that decision by that date. Plaintiff only alleges that, "midway through the fourth quarter," Defendants recognized that Groupon was not competing effectively in Goods. (¶¶61, 107.) Even if that could be read to mean sometime before November 4, 2019—a conclusion that Plaintiff alleges no facts to support—it cannot support the further conclusion that Groupon had decided to exit Goods by that time.[5] Plaintiff cannot premise a fraud based on a purported failure to disclose a decision that had yet to be made.

In any event, as with the July 30, 2019 statements, none of Defendants' November 4, 2019 statements about Select triggered any duty to disclose information about Select over-indexing, assuming that was even known at that time. Plaintiff argues that Defendants' general "boosterism" of Select on November 4, 2019, rendered the alleged omission of this information misleading. (Opp. 10.) Not so. As noted above, the mere fact that Defendants discussed Select as a general matter did not obligate them to discuss *every* detail about its performance. *Anderson*, 140 F. Supp. 2d at 903-06. Moreover, Groupon never suggested that Select's tendency to over-index to Goods was a negative indicator for Select, such that the alleged omission of that information would render positive statements regarding Select's performance misleading.

---

[5]  Contrary to Plaintiff's suggestion, the statement that the lower-than-anticipated traffic to Groupon's site was "particularly notable in November" cannot be read as stating that Groupon had concluded that Goods was "unsustainable" before November 4, 2019 (only the second business day of that month). (Opp. 9 (quoting ¶7).) It suggests the opposite: that the "particularly notable" reduction in traffic in November— which clearly could not have been evaluated based on a few days' worth of data—is what ultimately led Groupon to conclude it should exit Goods.

7

In any event, Defendants' vague "boosterism" of Select would only be relevant if Plaintiff premised his case on misrepresentations about Select's long-term prospects, rather than its near-term performance. Defendants did not state that Select would boost earnings in the near-term. Indeed, Plaintiff admits that in discussing Select, Defendants stated that (i) only 0.57% of Groupon's 45.3 million customers had enrolled, (ii) Groupon was still "testing" the program, and (iii) financial results "may be *adversely* impacted in the near term." (¶¶77, 83 (emphasis added).)

### 3. December 11, 2019 Barclays Conference

Equally flawed is Plaintiff's allegation that Mr. Williams' statements of fact made during the Barclays conference were misleading because they failed to disclose Select's over-indexing to Goods. (Opp. 8.)[6] Again, Plaintiff does not plead with sufficient particularity or factual support that Select was over-indexing to Goods as of December 11, 2019. And even if Select was over-indexing at that time, Mr. Williams would not have had a duty to disclose that information. Nothing that Mr. Williams said during the Barclays conference implicated Select's indexing behavior, and none of Plaintiff's allegations support an inference that Groupon had at that time decided to make any changes to Select based on its indexing behavior or other factors.[7]

### B. Defendants' Forward-Looking Statements Are Inactionable.

Many of the statements cited in the Complaint are "forward-looking statements" that were reasonable when made and accompanied by meaningful cautionary language, and thus are

---

[6]     Again, Ms. Thomas did not participate in the Barclays conference. (*See* Br. 20 n.7.) Plaintiff, who offered no response in his Opposition, cannot bring a claim against Ms. Thomas for these statements.

[7]     Plaintiff presents additional arguments that are meritless. *First*, he argues that Mr. Williams misled the market during the Barclays conference by omitting that "Groupon was unable to effectively compete in Goods." (Opp. 8.) But Mr. Williams did not say *anything* about Goods during the conference (*see* Br. Ex. A); he therefore had no duty to disclose this information, even if it was known at that time (which Plaintiff does not allege in any event). *Second*, Plaintiff criticizes Defendants' argument about Goods' "highly seasonal" nature because, in part, it "misconstrues the scope of permissible arguments on a motion to dismiss" where "'there is a contested question of fact.'" (Opp. 8 n.5 (citation omitted).) But Goods' highly seasonal nature is not contested: Plaintiff himself pled, and bolded, this fact. (¶110 ("highly seasonal").)

8

protected by the PSLRA's safe harbor. (*See* Br. 10-14, 18-20.) As such, they are not actionable. Plaintiff argues that most of these statements "include . . . representations about past and present performance" and that Defendants thus "forfeited any protection otherwise available for forward-looking portions of these statements." (Opp. 15.) But Plaintiff's authority says nothing to this effect. Rather, as Plaintiff acknowledges, "a mixed present/future statement" only lacks safe harbor protection "with respect to the part of the statement that refers to *the present.*" (*Id.* (quoting *Makor Issues & Rights, Ltd. v. Tellabs Inc.* ("*Tellabs III*"), 513 F.3d 702, 705 (7th Cir. 2008) (emphasis added)).) But as noted above, Plaintiff does not allege that any of Defendants' statements that refer to the present—including those cited in his Opposition—were actually false. (*See* Opp. 15 n.13.)

Plaintiff also argues that the safe harbor does not apply because Defendants' forward-looking statements were not accompanied by meaningful cautionary language. (Opp. 16.) But the Seventh Circuit has recognized that "[t]he PSLRA does not require the most helpful caution; it is enough to identify important factors that could cause actual results to differ materially from those in the forward-looking statement." *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004). Defendants' statements, considered collectively, did just that. Groupon listed numerous risk factors in its 10-Qs, including risks associated with "execution of [Groupon's] business and marketing strategies; retaining existing customers and adding new customers; . . . [and] competing successfully in our industry." (Br. Ex. B at 3; Br. Ex. C at 3.) With respect to Select, Groupon *repeatedly* warned that the program was still a "new" initiative in its "testing" phase (¶¶68, 71, 77, 81, 83), and that Groupon's gross profit and operating income could "be adversely impacted in the near term" due to Select's marketing costs. (¶¶73, 83.)[8] These were not "[g]eneric warnings of

---

[8] Plaintiff argues that Mr. Williams admitted during the Q3 2019 earnings announcement "that Select had outgrown its experimental roots" because he used the past tense when stating that Select "was a trial." (Opp. 16.) This argument not only takes Mr. Williams' statement out of context, but is patently false. As

9

'risks associated with introducing new products.'" (Opp. 16 (quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc*. 437 F.3d 588 (7th Cir. 2006)).) Rather, they were precisely the kind of "detailed and specific" statements regarding "new" programs in their "early" years that courts have found trigger safe harbor protection. *See, e.g.*, *Rochester Laborers Pension Fund v. Monsanto Co.*, 883 F. Supp. 2d 835, 881 (E.D. Mo. 2012).

Defendants' reaffirmation of Groupon's full-year 2019 earnings guidance during the Q3 2019 earnings announcement also is entitled to safe harbor protection. (*See* Br. 20.) Indeed, "projection[s] of revenues" and "future economic performance" are among the quintessential examples of the types of "forward-looking" statements that the safe harbor is meant to protect. 15 U.S.C. § 78u-5(i)(1). Plaintiff argues that Defendants are liable for this guidance reaffirmation because they "ignored facts seriously undermining the accuracy of the forecast." (Opp. 16-17.) That is wrong as a matter of both fact and law. Once again, Plaintiff fails to allege that the information he now says "undermin[ed] the accuracy" of Groupon's projections existed when Defendants reaffirmed the 2019 guidance. (*Id.*) And in any event, the safe harbor provides that when a projection is accompanied by meaningful cautionary language, the speaker's state of mind is irrelevant. *See* 15 U.S.C. § 78u-5(c)(1)(A); *In re Midway Games, Inc. Sec. Litig*., 332 F. Supp. 2d 1152, 1168 (N.D. Ill. 2004). Defendants made numerous cautionary statements regarding the risks associated with Groupon's business as a whole, and Select specifically, during the Q3 2019 earnings announcement. (*See* Br. 19-20.) Their guidance reaffirmation thus is inactionable.

---

Plaintiff himself admits, Mr. Williams told investors then that Groupon was "still analyzing [Select's] early results," as its "first small cohorts [were] barely through their first year with the program." (¶45.) Indeed, even as of the December Barclays conference, Mr. Williams expressed his "pragmati[sm] about the program" because Groupon then "recogniz[ed] it's an early-stage program." (Br. Ex. A at 6-7.)

## C. Defendants' Statements of Opinion and General Optimism Are Inactionable.

Defendants also have established that many of the statements in the Complaint are "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker" so as to be "immaterial as a matter of law." (Br. 10, 18, 22 (quoting *In re Midway Games*, 332 F. Supp. 2d at 1164).) Plaintiff disagrees, arguing that these statements were all "embedded within [] string[s] of highly material factual information." (Opp. 14.) That is correct: Defendants made numerous statements of objective fact throughout the Class Period, all of which were *true*. Plaintiff does not allege otherwise, thus revealing his inability to show that Defendants' vaguely optimistic statements and opinions were materially misleading.

Plaintiff also argues that the vague statements and opinions in the Complaint are material as a matter of law (albeit without providing any authority) because "[a]nalysts routinely discussed [them] in research notes." (Opp. 15 n.11.) This argument misses the mark. The fact that analysts repeated (often verbatim) statements contained in Groupon's quarterly disclosures has no bearing on whether Defendants' statements were materially false or misleading as a matter of law.

## D. Plaintiff Fails to Plead a Violation of Item 303.

Plaintiff's fraud claims fare no better under Item 303. As Plaintiff admits, Item 303 only imposes a duty to disclose "*known* trends . . . that have had or that the registrant reasonably expects will have a *material* . . . impact on *net sales or revenues or income from continuing operations*." (Opp. 18 n.16 (quoting 17 C.F.R. § 229.303(a)(3)(ii) (emphases added)).) None of the information allegedly omitted from Groupon's Q2 and Q3 2019 10-Qs satisfies these criteria.

As to Goods, Plaintiff argues that Groupon failed to disclose that it struggled to "compete in a fiercely competitive . . . retail landscape" and that "Goods had been less meaningful as an 'engagement tool' for Groupon to drive business to Local." (Opp. 19 (citing ¶¶64, 107-08, 119).) But Groupon *repeatedly* disclosed this information in its Q2 and Q3 2019 10-Qs. (*See* Br. 23-24.)

11

And while Plaintiff alleges that Defendants violated Item 303 by not disclosing Groupon's determination that "Goods was no longer able to compete and ha[d] largely ceased providing added value" (¶96), he also alleges that Groupon could not have disclosed this fact in its Q2 and Q3 2019 10-Qs because it was not made until "midway through the fourth quarter," at the earliest. (¶100.)

As to Select, as noted above, Plaintiff has not alleged with sufficient particularity that Select was over-indexing to Goods as of the filing of Groupon's Q2 and Q3 2019 10-Qs, much less that it was a "known trend" by either date. And more importantly, Plaintiff does not, and cannot, allege that Select's indexing behavior *ever* had a material impact on Groupon's net sales, revenues, or income, as required to trigger a duty to disclose under Item 303. (*See* Br. 23.)

### III.      Plaintiff Fails to Plead Scienter.

Plaintiff also fails to plead scienter. Even setting aside the exact timing of the emergence of allegedly omitted information regarding the alleged misstatements, the law is clear that Defendants had no duty to provide a running commentary on Groupon's ups and downs. *See City of Livonia Emps.' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 759 (7th Cir. 2013); *Higginbotham v. Baxter Int'l*, *Inc.*, 495 F.3d 753, 760 (7th Cir. 2007). By not immediately disclosing trends or information, the most plausible inference raised by the Complaint is that Defendants were reluctant to disclose "half-formed stories." *Higginbotham*, 495 F.3d at 760-61.

None of Plaintiff's other allegations give rise to a strong inference of scienter. Recognizing the futility of relying on after-the-fact results, Plaintiff asks the Court to infer Defendants' collective scienter based on (i) their access to and active monitoring of developments in Select and Goods, (ii) their public statements regarding the performance of Select and Goods, (iii) their knowledge of the "core" nature of Select and Goods, and (iv) the "magnitude" of the alleged fraud. (Opp. 21-24.) However, these allegations fail to establish scienter because Plaintiff does not allege any facts showing that Defendants' monitoring of Groupon's business provided them information

12

that contradicted their public statements. *See Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018) (scienter requires showing each defendants' "knowledge of the statement's falsity or reckless disregard of a substantial risk that the statements is false").[9]

Similarly, neither access to analytics nor knowledge of the "core" nature of certain operations is sufficient to allege scienter without particularized allegations of contradictory, internal information known to Defendants. *See Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 888, 902 (N.D. Ill. 2020); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 999 (E.D. Wis. 2009) ("[N]ot only is mere receipt of reports insufficient to establish scienter, the inferential leap required to tie these alleged facts to the conclusion that defendants acted knowingly or recklessly when presenting relevant information to the market is untenable given the heightened pleading standards."). Asserting scienter based on the fact that Defendants made public statements about the topics on which Plaintiff bases his securities fraud claims is an illogical, circular argument. Nor is the "magnitude" of the fraud (Opp. 24) a compelling basis for scienter where Plaintiff has failed to plead the existence of a fraud in the first place and where the import of the program (Select) on which the alleged fraud relies is miniscule.[10]

Finally, because Plaintiff does not plead a strong basis to infer intent, a showing of motive is particularly important. *See Ross*, 2012 WL 5363431, at *11. But Plaintiff fails to allege any concrete, "personal benefit" to the Defendants from the purported fraud. *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005). Instead, he asserts that Defendants might have committed

---

[9] The weakness of Plaintiff's scienter allegations is further highlighted by his continued reliance on improper group pleading, which makes it "impossible to assess the statements any [] Defendant[] made . . . against the information he allegedly possessed at the time he made them." (Br. 25 (quoting *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 609 (7th Cir. 2019)).)

[10] Plaintiff also argues that Mr. Williams' change in position after the alleged Class Period supports an inference of scienter. But this allegation alone is insufficient to establish scienter where, as here, Plaintiff fails to allege any wrongdoing by Mr. Williams. (*See* Br. 26 (citing *Ross v. Career Educ. Corp.*, No. 12 C 276, 2012 WL 5363431, at *11 (N.D. Ill. Oct. 30, 2012)).)

13

fraud, even without an apparent motive, as a gamble that good news might overtake bad. (Opp. 28 (citing *Tellabs III*, 513 F.3d at 710).) But Plaintiff's theory finds no support in the facts alleged. Plaintiff alleges at most that Defendants, as "[p]rudent managers," did what the law entitles and encourages them to do: take the necessary time to "conduct inquiries" and investigate emerging results. *Higginbotham*, 495 F.3d at 760-61; *see also City of Livonia*, 711 F.3d at 761.

**IV.        Plaintiff Fails to Plead Loss Causation.**

Plaintiff also fails to plead loss causation. Plaintiff acknowledges that to plead loss causation, he must allege both that (i) Defendants made a misstatement that artificially inflated Groupon's stock price, and (ii) the stock price declined because the market learned of the misstatement. (Opp. 28.) But Plaintiff does not apply that standard. Instead, he ignores the first requirement entirely, fails to identify any ***corrective*** disclosures, and illogically conflates the supposed market impact of Select, one of several new, sub-scale experimental initiatives announced on July 30, 2019, with that of a full-year earnings miss.

Plaintiff ignores the first requirement in his Opposition because he cannot point to ***any*** misleading statements about Select or Goods on July 30, 2019, that could have artificially inflated Groupon's stock price. Indeed, *none* of the statements in the Complaint from that date were about Goods at all. (*See* ¶¶66-74.) And the information about Goods that allegedly was omitted—"that it was 'abundantly clear' that Goods was failing"—did not exist until "***midway through the fourth quarter of 2019***." (Opp. 28 (emphasis added).) That alleged omission could not possibly have artificially inflated Groupon's stock price throughout a Class Period that began on July 30, 2019.

The allegations in the Complaint also preclude any reasonable inference that statements or purported omissions about Select artificially inflated Groupon's stock price throughout the Class Period. Defendants are not "disput[ing]" Plaintiff's factual allegations or "downplaying" Select (Opp. 29-30), but rather are pointing out that the specific facts Plaintiff alleged do not support the

inferences he asks the Court to draw on loss causation. (*See* Br. 29-30.) The Complaint describes Select as one of several early-stage initiatives involving well less than 1% of Groupon's customers, and whose costs might negatively affect full-year results. (¶¶68-71.) Plaintiff does not address how Select could possibly have artificially inflated Groupon's stock price beginning on July 30, 2019, given this information. (¶¶71, 73.)

Plaintiff also fails to plead facts to satisfy the second element of loss causation: that Groupon's stock price declined **because** the market learned of a purported deception about Select's over-indexing or Goods' exit. *See Ray v. Citigroup Global Markets, Inc.*, 482 F.3d 991, 995 (7th Cir. 2007). Plaintiff does not identify any disclosures on February 18 and 19, 2020, that corrected (or revealed as deceptive) anything Defendants previously said about Select or Goods.[11] Nor does Plaintiff address the fact that Groupon disclosed during the Q4 2019 earnings announcement that Select had underperformed in the quarter due to "higher than anticipated customer acquisition costs" and lower than expected numbers of enrollees converting to paid members. (¶114; Br. 5.)

Finally, in an attempt to connect the purported fraud (alleged omissions about Select) to the harm (Groupon's 44% stock price decline), Plaintiff conflates Select's performance with Groupon's $43 million earnings miss. (Opp. 29.) Plaintiff's own allegations of Select's small size and Groupon's warning that Select's marketing costs may negatively affect 2019 results render the inferences he urges the Court to draw illogical. Yet the Opposition ignores these facts, which Plaintiff himself pled, urging the Court to overlook these shortcomings because his pleading burden is not "great." (Opp. 28.) The Seventh Circuit has made clear that to *plead* the element of loss causation, plaintiffs must identify *facts* that "tether . . . directly" the alleged fraud to the harm. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 335 (7th Cir. 2019). This Plaintiff cannot do.

---

[11]     Tellingly, the Complaint fails to cite any analyst reports analyzing Groupon's Q4 earnings results, in particular Select's over-indexing, in support of Plaintiff's theory of securities fraud. (*See* ¶¶149-55.)

15

## **CONCLUSION**

For the reasons set forth herein and in the Opening Brief and motion to dismiss, the Court should dismiss the Complaint with prejudice.

Dated: January 13, 2021

Respectfully submitted,

*/s/ Matthew R. Kipp*
Matthew R. Kipp
William E. Ridgway
Andrew J. Fuchs
Jennifer H. Berman
Laura Bernescu
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
matthew.kipp@skadden.com
william.ridgway@skadden.com
andrew.fuchs@skadden.com
jennifer.berman@skadden.com
laura.bernescu@skadden.com

*Counsel for Defendants*

16

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint was filed on January 13, 2021, with the Clerk of Court using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

*/s/ Matthew R. Kipp*
Matthew R. Kipp
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
matthew.kipp@skadden.com

*Counsel for Defendants*