# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-02581 |
| Plaintiff, | Honorable Matthew F. Kennelly |
| v. | |
| GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, | |
| Defendants. | |

# LEAD PLAINTIFF'S REPLY IN SUPPORT OF
# MOTION FOR LEAVE TO AMEND

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT.................................................................................................................... 1

    I.      The PSAC Adequately Pleads Defendants' Materially Misleading Statements..... 1

          A.     Defendants' Mischaracterize the PSAC's Well Pled Allegations .............. 1

          B.     Defendants' Failure to Disclose Select's Over-Indexing to Goods
               Rendered Their Class Period Statements Materially Misleading ............... 3

               1.     The PSAC Strengthens Allegations Concerning Select's
                     Materiality................................................................................. 3

               2.     Defendants' Present-Tense Statements About Select Were
                     Materially Misleading ...................................................... 4

          C.     Guidance Reaffirmation and Item 303 are Actionable .............................. 5

    II.     The PSAC Adequately Alleges Scienter................................................................ 6

    III.    The PSAC Adequately Alleges Loss Causation ..................................................... 8

CONCLUSION................................................................................................................ 10

## TABLE OF AUTHORITIES

CASES

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ................................................................................................... 10

*Anderson v. Abbott Labs.*,
140 F. Supp. 2d 894 (N.D. Ill. 2001) .................................................................... 4, 5

*Asher v. Baxter Int'l Inc.*,
377 F.3d 727 (7th Cir. 2004) .................................................................................. 10

*Born v. Quad/Graphics, Inc.*,
2021 WL 736839 (S.D.N.Y. Feb. 25, 2021) ......................................................... 10

*Carpenters Pension Tr. Fund for N. California v. Allstate Corp.*,
2018 WL 1071442 n.3 (N.D. Ill. Feb. 27, 2018) ..................................................... 7

*City of Livonia Employees' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) .................................................................................... 8

*Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*,
114 F. Supp. 3d 633 (N.D. Ill. 2015) ...................................................................... 4

*Dileo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) .................................................................................... 7

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ............................................................................................. 8, 9

*Flynn v. Exelon Corp.*,
2021 WL 1561712 (N.D. Ill. Apr. 21, 2021) ........................................................... 8

*Higginbotham v. Baxter Intern., Inc.*,
495 F.3d 753 (7th Cir. 2007) .................................................................................... 8

*In re Allstate Corp. Sec. Litig.*,
2020 WL 7490280 (N.D. Ill. Dec. 21, 2020)........................................................... 9

*In re Alphabet, Inc. Sec. Litig.*,
2021 WL 2448223 (9th Cir. June 16, 2021) ............................................................ 7

*In re Baxter Int'l Inc. Sec. Litig.*,
2021 WL 100457 (N.D. Ill. Jan. 12, 2021)............................................................. 7

*Lindelow v. Hill*,
2001 WL 830956 (N.D. Ill. July 20, 2001)..................................................................... 4

*Macovski v. Groupon, Inc.*,
2021 WL 1676275 (N.D. Ill. Apr. 28, 2021) ................................................................ 1

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d  (7th Cir. 2008) .............................................................................................. 7

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
437 F.3d 588 (7th Cir. 2006) ........................................................................................ 7

*Marks v. CDW Computer Centers, Inc.*,
122 F.3d 363 (7th Cir. 1997) ........................................................................................ 4

*Pierrelouis v. Gogo, Inc.*,
2021 WL 1608342 (N.D. Ill. Apr. 26, 2021) ............................................................... 7

*Shah v. Zimmer Biomet Holdings, Inc.*,
348 F. Supp. 3d 821 (N.D. Ind. 2018) ......................................................................... 4

*Van Noppen v. InnerWorkings, Inc.*,
136 F. Supp. 3d 922 (N.D. Ill. 2015) ........................................................................... 5

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)............................................................................................ 9

*Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*,
2019 WL 4597518 (N.D. Ill. Sept. 23, 2019) .............................................................. 8

iii

**PRELIMINARY STATEMENT**

Lead Plaintiff Fadi E. Rahal ("Plaintiff") respectfully submits this reply in further support of his motion for leave to amend, pursuant to the Court's April 28, 2021 Order, which dismissed the Amended Class Action Complaint without prejudice on "puzzle pleading" grounds. *See* ECF No. 67; *Macovski v. Groupon, Inc.*, 2021 WL 1676275, at *6 (N.D. Ill. Apr. 28, 2021).[1] In opposition, Defendants do not argue that the Proposed Second Amended Complaint constitutes impermissible puzzle pleading. Defendants instead oppose Plaintiff's motion on futility grounds. As discussed below, Defendants' futility arguments in opposition to the PSAC: (i) are legally meritless; (ii) largely ignore, or distort, the PSAC's allegations; and (iii) at most raise factual issues that are manifestly inappropriate for resolution at the pleading stage. Accordingly, Plaintiff respectfully submits that the Court should grant the motion for leave to amend.

**ARGUMENT**

**I.     The PSAC Adequately Pleads Defendants' Materially Misleading Statements**

**A.     Defendants' Mischaracterize the PSAC's Well Pled Allegations**

Defendants' argument that the PSAC fails because it "alleges no facts showing that Groupon decided in 2019 to exit Goods," mischaracterizes Plaintiff's claims as well as his pleading burden. Def. Br. at 3; *see also id.* at 10. Plaintiff *has not* alleged that Defendants' statements were misleading because they failed to disclose that Groupon had already decided to exit Goods. Rather, Plaintiff alleges that Defendants' statements were misleading because they did not disclose that:

---

[1] "PSAC" refers to "Lead Plaintiff's Proposed Second Amended Complaint" (ECF No. 68-1). All capitalized terms not otherwise defined herein have the meanings ascribed in the PSAC, and all references to "¶" are to the PSAC. "Def. Br." refers to "Defendants' Memorandum of Law in Opposition to Lead Plaintiff's Motion for Leave to Amend" (ECF No. 70). "Def. MTD Br." refers to "Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint" (ECF No. 43). "MTD Op." refers to "Lead Plaintiff's Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint" (ECF No. 55).

(i) Select was, by the second half of 2019, "over-indexing" to Goods; and (ii) by midway through the fourth quarter of 2019 – *i.e.*, November of 2019 – it was "abundantly clear" to Defendants that Groupon could no longer effectively compete in Goods. ¶¶ 71, 73, 75, 79, 82, 84-85, 87-89, 91, 93, 97, 99. Thus, regardless of whether Groupon had firmly decided to exit Goods at the time Defendants spoke in November and December 2019, their statements were misleading because they knew, but failed to disclose, that Select was bound to the foundering Goods business line. *Id.*

Defendants similarly mischaracterize the PSAC by arguing that the Class Period statements concerning Select were not misleading because Groupon's "decision to discontinue Select's enrollments," post-dated the statements at issue. Def. Br. at 8; *see also id.* at 5. But that argument is a *non-sequitur*; Plaintiff *does not* allege that Defendants' statements were misleading for failing to disclose *that decision*. Rather, Plaintiff alleges that Defendants' statements were misleading because *they knew but failed to disclose* that Select was not fulfilling its intended function and was over-indexing to Goods, at a time when it was "abundantly clear" that Goods was a failing business. ¶¶ 71, 73, 75, 79, 82, 84-85, 87-89, 91, 93, 97, 99.

Defendants are also incorrect that their post-Class Period admission that they learned that Select was over-indexing to Goods in the second half of 2019 does not mean that they knew of that trend as of their July 30-31, 2019 and November 4-5, 2019 statements. As explained in the PSAC, Defendants' reference to the second half of 2019 must have meant some time in Q3 2019 (*i.e.*, July through September 2019). *See* ¶¶ 53-57; *see also* MTD Op. at 8, 10-11.[2] And while Defendants raise a factual issue as to what they knew at the time of their July 30-31, 2019

---

[2] Indeed, Defendants were perfectly capable of identifying events in the fourth quarter if that is what they meant (¶ 54), or in a specific month, such as November, if that is what they meant (*see id.*). Thus, the inference that the reference to the "second half" must have meant sometime in the second half prior to the fourth quarter, is based on the most reasonable inference from Defendants' own public statements, and not mere "conclusory speculation," as Defendants argue (*see* Def. Br. at 3).

statements – one month into Q3 2019[3] – they cannot dispute that, by their own admission, the over-indexing trend *was already occurring and known* to Defendants when they spoke in Q4 2019 on November 4-5 and December 11, 2019 (*See* ¶¶ 54-57), as was Goods' failure. *Id.* ¶¶ 62-66 .

Defendants are wrong that Groupon's August 2019 decision to provide an additional discount for Select customer purchases on Goods "undercuts Plaintiff's allegations that Defendants knew that they were over-indexing to Goods." Def. Br. at 8. Defendants' affirmative conduct supports the inference that they knew of the over-indexing at the time of, or shortly after, their decision, and long before their November and December 2019 statements. MTD Op. at 10.

    **B.    Defendants' Failure to Disclose Select's Over-Indexing to Goods Rendered Their Class Period Statements Materially Misleading**

        **1.    The PSAC Strengthens Allegations Concerning Select's Materiality**

Defendants argue that their failure to disclose that Select was over-indexing to the foundering Goods segment could not be misleading, because Select was "new," "experimental," and in the "testing" phase. *See* Def. Br. at 4, 6, 8, 14. Defendants provide no authority for their remarkable contention. And for good reason, the securities laws do not permit a defendant to repeatedly tout a program, including the program's alleged successes to date, while omitting related adverse information simply because the program is "new," where the program *is material* to the company's business prospects. *See* MTD Op. at 11-12. Here, Defendants' Class Period statements flatly contradict their suggestion that Select was "immaterial." *See* ¶¶ 149-53; MTD Op. at 12-13.

Moreover, Defendants elide mention of how the PSAC strengthened Plaintiff's well-pled allegations concerning how Groupon, and therefore by Groupon's investors, viewed Select as

---

[3] Defendants' statements give rise to the reasonable inference that they were aware of the over-indexing trend as of July 30-31, 2019. *See* MTD Op. at 11.

critical to the Company's future and therefore highly material. For example, Defendants do not address that research analysts considered Select to be material to Groupon's performance. ¶ 39 (describing analyst report describing Select's performance as "not immaterial" and noting that "[m]anagement notes that Select is materially impacting behavior at every cohort level."). Nor do Defendants address new allegations about Select's materiality that strengthen the inference that challenged statements concerning Select's performance were materially misleading. *See, e.g.*, ¶ 153 (discussing January 17, 2020 UBS Upgrade Report that labeled Select as one of Groupon's "three key strategic initiatives" in materiality context).[4]

### 2. Defendants' Present-Tense Statements About Select Were Materially Misleading

The fact that Defendants' statements might have been literally true, Def. Br. at 2, 6, 7, 9, does not get them off the hook, where, as here, those statements omitted material adverse information. *See* MTD Op. at 6.[5] Indeed, having touted the success they were allegedly experiencing with Select, Defendants had a duty to disclose the over-indexing to the faltering Goods division, especially by the time it had become "abundantly clear" to Defendants in November 2019 that Groupon could no longer compete effectively in Goods.[6]

---

[4] In any event, the issue of materiality is highly fact intensive "rarely appropriate at the summary judgment stage, let alone on a motion to dismiss.'" *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 840 (N.D. Ind. 2018) (quoting *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 370 (7th Cir. 1997)). Defendants fall far short of showing that no reasonable investor could have found the statements regarding Select immaterial as a matter of law.

[5] *See also Constr. Workers Pension Fund-Lake Cty. & Vicinity v. Navistar Int'l Corp.*, 114 F. Supp. 3d 633, 651 (N.D. Ill. 2015) ("Even statements that are literally true can still be actionable under § 10(b) as misleading if they are susceptible to another interpretation by a reasonable investor."); *Lindelow v. Hill*, 2001 WL 830956, at *3 (N.D. Ill. July 20, 2001) (similar).

[6] Defendants' reliance on *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 906 (N.D. Ill. 2001) (Def. Br. at 4) to argue against a disclosure duty is misplaced. *Anderson* stands for unremarkable proposition that when a company discusses a topic it is not required "to disclose every tangentiality related fact that might interest investors." 140 F. Supp. 2d at 903. There, the court found there was no duty to disclose the allegedly omitted information concerning FDA issues because the statements cited in the complaint "d[id] not even remotely touch on regulation, so they could not have misled investors to believe there were no regulatory

4

Likewise, cautionary statements concerning the potential adverse impact of investment costs on Select's "near term" profits (Def. Br. at 5) did not warn investors that Select was *already* over-indexing to the deeply troubled Goods segment. Warnings of a potential future event do not absolve Defendants for failure to disclose already-occurring adverse events. *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 949 (N.D. Ill. 2015). Moreover, the warning says nothing about Select's actual or potential over-indexing to Goods.

### C.    Guidance Reaffirmation and Item 303 are Actionable

Defendants argue that Groupon's reaffirmation of its full-year adjusted EBIDTA guidance of $270 million on November 4, 2019 is inactionable. Def. Br. at 10-11. But the guidance reaffirmation is actionable because the PSAC credibly alleges that it became apparent to Defendants by November 2019 that Groupon could no longer compete effectively in Goods, which had historically comprised 50% of Groupon's revenue. *See* MTD Op. at 16-18 (discussing guidance reaffirmation). Defendants' renewed temporal arguments do not salvage this argument. *See* Section I.A, *supra*. Likewise, generic "cautionary" language recycled verbatim from pre-Class Period filings do not afford Defendants' of the PSLRA safe harbor. *See* MTD Op. at 17-18.

Defendants' limited renewed challenge to Plaintiff's Item 303 claims fail for similar reasons. Def. Br. at 11-12. In light of the materiality of both business segments, the over-indexing of Select to Goods and the obvious failure of Goods to compete were both trends that should have been disclosed pursuant to Item 303. *See* MTD Op. 18-21. The PSAC draws the reasonable inference, based on Defendants' own admissions, that the over-indexing was occurring and known

---

issues," and some of the statements predated those issues. *Id*. at 904-06. By contrast here, Defendants spoke not only of Select's potential, but also how Select's results to date suggested that the program was on its way to realizing that potential. *E.g.*, ¶¶ 34-45. Those statements were misleading for failing to disclose that a disproportionate share of Select's business was indexing to Groupon's faltering Goods business; a business that Defendants knew was underperforming. ¶¶ 71, 73, 75, 79, 82, 84-85, 87-89, 91, 93, 97, 99.

to Defendants by July—and, in any event, before Groupon's Q3 2019 10-Q was filed on November 4, 2019." *See* ¶¶ 75, 88-89. Likewise, the PSAC relies on Defendants' own statements to allege that Defendants' knew that Groupon no longer could no longer compete in Goods by November. *See* Def. Br. at 11-12; ¶¶ 88-89. These admissions belie the notion that Defendants did not view Select's over-indexing to Goods as a negative development during the Class Period. ¶¶ 56-57.

## II.      The PSAC Adequately Alleges Scienter

The PSAC continues to assert a straight-forward theory of scienter rooted in Defendants' end-of-Class Period admissions. *See* MTD Op. at 21-28. Defendants' claim that "Plaintiff has done virtually nothing to bolster his scienter allegations" (Def. Br. at 12) ignores numerous allegations added to the PSAC that address arguments previously raised by Defendants. For example, Defendants previously argued that the FAC was deficient for "alleg[ing] scienter against all Defendants collectively, without identifying what information was known by whom, or how that information rendered specific statements misleading." Def. MTD Br. at 24-25. The PSAC addresses this purported deficiency by adding allegations as to what information each Defendant knew at the time they made each statement. *E.g.*, ¶¶ 71, 73, 75, 79, 82, 84-85, 87-89, 91, 93, 97, 99.

Defendants alternatively resort to mischaracterizing what is alleged and argue factual inferences to which they are not entitled at the pleading stage. For example, Defendants cite ¶ 123 of the PSAC, but they recast their admission that Goods' "November performance was particularly poor" (¶ 123) as a mere "struggle" to support Defendants' preferred inference "that Defendants preferred not to disclose 'half-formed stories' before the earnings call." Def. Br. at 12. But Goods did not simply "struggle" as of November 2019; rather, Defendants admitted that it was "abundantly clear" at that time that Groupon *could no longer effectively compete in Goods* (¶¶ 105-06), and that Select was over-indexing to Goods (¶¶ 109-112). Moreover, Defendants were not

6

simply silent during the Class Period; rather, they affirmatively misled investors as to Select's success. *E.g.*, ¶¶ 37, 39, 43. In any event, "the fact that it is not certain precisely when the information available to defendants became bad enough to render Defendants' statements knowingly or recklessly false does not defeat [P]laintiff's claim because the Court need not identify the precise moment at which the culpable inference overtook the innocent one' at this early stage." *Pierrelouis v. Gogo, Inc.*, No. 18 Civ. 4473, 2021 WL 1608342, at *9 (N.D. Ill. Apr. 26, 2021) (cleaned up).

Defendants also criticize the PSAC for failing to include motive or confidential witness allegations (Def. Br. at 12-13 & n.4[7]), despite the fact that such allegations are not necessary to plead a strong inference of scienter. *See* MTD Op. at 27-28 (citing, *inter alia*, *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 597 (7th Cir. 2006)); *see also Pierrelouis*, 2021 WL 1608342, at *8-9 (lack of motive not fatal to scienter allegations).[8] Indeed, Defendants' own cases indicate that motive allegations and statements from confidential witnesses would not necessarily support a strong inference of scienter. *See In re Baxter Int'l Inc. Sec. Litig.*, No. 19 C 7786, 2021 WL 100457, at *16 (N.D. Ill. Jan. 12, 2021) (motive alone is not sufficient to allege scienter);[9]

---

[7] Defendants rely on *Dileo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990) to argue that allegations of misconduct cannot plead a claim for securities fraud if the defendants had no rational economic motive to commit the alleged misconduct. Def. Br. at 9. *Dileo* involved a fraud claim against an auditor, where the burden that plaintiff faces is higher than with respect to issuers and its officers, and the claim was dismissed because the court concluded that the auditor had no rational motive to commit fraud. 901 F.2d at 629. *Dileo*, however, predates the Supreme Court's *Tellabs* opinion, which confirms that scienter can be pled even absent evidence of a motive. Similarly, courts have held that scienter can be pled even if the fraud might appear to be economically irrational. *E.g.*, *Pierrelouis*, 2021 WL 1608342, at *8 (discussing *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 710 (7th Cir. 2008)).

[8] *See also Carpenters Pension Tr. Fund for N. California v. Allstate Corp.*, 2018 WL 1071442, at *6 n.3 (N.D. Ill. Feb. 27, 2018) (scienter pled without confidential witnesses); *In re Alphabet, Inc. Sec. Litig.*, 2021 WL 2448223, at *13 (9th Cir. June 16, 2021) ("Allegations of suspicious stock sales or information from confidential witnesses are not needed where, as here, other allegations in the complaint raise a strong inference of scienter.")

[9] The court in *Baxter* did not find that the failure to plead stock sales on its own negated scienter (*compare* Def. Br. at 12-13), but because the defendants' compensation in *Baxter* was largely comprised of stock and

*Higginbotham v. Baxter Intern., Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007) (allegations from confidential sources are usually subject to a "steep" discount); *City of Livonia Employees' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 759 (7th Cir. 2013) (similar).

Thus, the PSAC's lack of motive or confidential witness allegations does not negate scienter when, as here, Plaintiff has pled "[o]ne of the classic fact patterns giving rise to a strong inference of scienter[,]… that defendants published statements when they knew facts or had access to information suggesting that their public statements were materially inaccurate." *Flynn v. Exelon Corp.*, 2021 WL 1561712, at *10 (N.D. Ill. Apr. 21, 2021) (internal quotations omitted).

### III.        The PSAC Adequately Alleges Loss Causation

Plaintiff alleged loss causation in the FAC (*see* MTD Op. at 28-30), and for similar reasons the PSAC also alleges loss causation. Defendants' arguments and authority fail to rebut loss causation, especially considering that Plaintiff bears only a modest burden at the pleading stage. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (plaintiff must "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind."); *Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*, 2019 WL 4597518, at *7 (N.D. Ill. Sept. 23, 2019).

First, Defendants argue that Plaintiff fails to allege falsity at the start of the Class Period on July 30, 2019, but this argument fails for the reasons discussed *supra* in Section I.A. *See also* MTD Op. at 11.[10] Defendants argue that the July 30, 2019 false statements do not relate to Goods (Def. Br. at 14), but the PSAC clearly alleges that these statements were materially misleading due

---

options, and plaintiffs alleged that defendants were motivated to inflate financial metrics so as to increase their compensation, the lack of sales by those defendants cut against plaintiffs' motive allegations. *Id.*

[10] It is unclear why Defendants limit their loss causation argument to focus on the beginning of the Class Period. It is beyond dispute that Defendants' false statements and omissions at any point in the Class Period could cause or maintain price inflation, and subsequent loss causation when the truth of Defendants' misrepresentations and omissions was revealed.

8

to the *omission* of information regarding Goods' underperformance and Select's over-indexing to Goods (*see* ¶¶ 71, 73, 75). Defendants assert that only one portion of the challenged statements relates to Select (Def. Br. at 14), but the immediate context of each statement plainly shows that they all relate to Select. *See* ¶ 70 ("Select is simply the best way to experience Groupon"); ¶ 72 (discussing "product enhancements" including "Groupon Select"). And Defendants boldly argue that "[a]ny allegedly omitted information about Select members' product choices . . . *could not possibly* have artificially inflated Groupon's stock." Def. Br. at 14 (emphasis added). Defendants cite no authority in support of this sweeping claim, instead relying solely on a recycled materiality argument that fails as shown in Plaintiff's MTD Opposition (*see* pp. 12-13, 30). Defendants simply are not entitled to their preferred conclusion at the pleading stage.[11]

Second, Defendants modify their unpersuasive argument that Plaintiff fails to allege a corrective disclosure. *But see* ¶¶ 103-12 (detailing corrective disclosures); MTD Op. at 29. Defendants now argue that the generic statement in the Q3 2019 Letter that Groupon was "not yet moving fast enough to offset our traffic challenge," was sufficiently fulsome to reveal to investors Goods' failure and Select's over-indexing to Goods. Def. Br. at 14. But as discussed above, this and Defendants' other purportedly "cautionary" statements failed to reveal the truth to investors (it says nothing about Select's over-indexing or Goods' failures), and in any event, "an argument that 'news of the [truth] credibly entered the market and dissipated the effects of the misstatement . . . is a matter for trial.'" *In re Allstate Corp. Sec. Litig.*, 2020 WL 7490280, at *7 (N.D. Ill. Dec.

---

[11] Moreover, the lack of a price increase on an alleged falsity date does not defeat loss causation. The Supreme Court in *Dura* squarely rejected the "'inflated purchase price' approach to proving loss causation." 544 U.S. at 344-45. *Cf. Waggoner v. Barclays PLC*, 875 F.3d 79, 90-91, 104 (2d Cir. 2017) (rejecting argument at class certification that lack of statistically statistic price increase on alleged falsity dates meant that "there was no connection between the misstatements and the price of Barclays' ADS").

21, 2020) (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 482 (2013)).[12]

Defendants next repeat their debunked claim that Plaintiff fails to allege falsity regarding Goods at the start of the Class Period. Def. Br. at 15; *but see* ¶¶ 71, 73, 75. In support, Defendants cite to the non-controlling, and inapposite authority of *Born v. Quad/Graphics, Inc.*, 2021 WL 736839 (S.D.N.Y. Feb. 25, 2021), where a plaintiff failed to allege corrective disclosures because the defendants' end of class period statements, "contained no information that even remotely suggests that Defendants' prior statements . . . were false or misleading." *Born*, 2021 WL 736839 at \*15. Here, in stark contrast, Defendants' end of Class Period admissions revealed the previously undisclosed information that rendered their Class Period statements misleading, namely, Goods' failure and Select's over-indexing to Goods months earlier. ¶¶ 103-12.

Finally, Defendants incorrectly argue that dismissal is warranted based on their claim that the stock price decline resulted exclusively from an earnings miss and was not related at all to the revelations that for months Select had over-indexed to the failing Goods sector, causing Groupon to discontinue enrollment in their highly touted new Select initiative or to exit the Goods division which had accounted for 50% of revenues. Def. Br. at 15. The law is clear that the fraud does not need to be the sole cause of a stock price decline, and therefore defendants' proffer of alternative causes for the stock decline does not warrant dismissal as a matter of law. *See* MTD Op. at 30.

## CONCLUSION

Plaintiff respectfully requests that the Court grant the motion to file the PSAC.

---

[12] *See also Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004), as amended (Sept. 3, 2004) (truth-on-the-market defense is not available at the pleading stage).

10

Dated:  July 9, 2021                                       **GLANCY PRONGAY & MURRAY LLP**

                                                           */s/ Kara M. Wolke*
                                                           Robert V. Prongay (admitted *pro hac vice*)
                                                           Kara M. Wolke (admitted *pro hac vice*)
                                                           Christopher Fallon (admitted *pro hac vice*)
                                                           1925 Century Park East, Suite 2100
                                                           Los Angeles, CA 90067
                                                           Telephone: (310) 201-9150
                                                           Email: rprongay@glancylaw.com
                                                                   kwolke@glancylaw.com
                                                                   cfallon@glancylaw.com

                                                           **KIRBY MCINERNEY LLP**
                                                           Ira M. Press (admitted *pro hac vice*)
                                                           Andrew M. McNeela (admitted *pro hac vice*)
                                                           Thomas W. Elrod (admitted *pro hac vice*)
                                                           250 Park Avenue, Suite 820
                                                           New York, NY 10177
                                                           Telephone: (212) 371-6600
                                                           Email: ipress@kmllp.com
                                                                   amcneela@kmllp.com
                                                                   telrod@kmllp.com

                                                           *Counsel for Lead Plaintiff and Lead Counsel
                                                           for the Proposed Class*

                                                           **POMERANTZ LLP**
                                                           Patrick V. Dahlstrom
                                                           Louis C. Ludwig
                                                           10 South LaSalle Street, Suite 3505
                                                           Chicago, IL 60603
                                                           Telephone: (312) 377-1181
                                                           Email: pdahlstrom@pomlaw.com
                                                                   lcludwig@pomlaw.com

                                                           *Liaison Counsel for Lead Plaintiff and the
                                                           Proposed Class*

11

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On July 9, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of Illinois, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 9, 2021.


*s/ Kara M. Wolke*
Kara M. Wolke