**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-02581 |
| Plaintiff, | Honorable Matthew F. Kennelly |
| v. | |
| GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
(II) CERTIFICATION OF THE SETTLEMENT CLASS; AND
(III) APPROVAL OF NOTICE OF SETTLEMENT**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................... 1

II. NATURE OF THE ACTION ............................................................................. 2

III. PROCEDURAL HISTORY................................................................................ 3

    A. The Initial Complaint And Lead Plaintiff Appointment........................................ 3

    B. Lead Counsel's Investigation, First And Second Amended Complaints And Defendants' Motions To Dismiss ................................................................. 3

    C. Discovery ............................................................................................ 4

    D. Mediation ........................................................................................... 5

IV. THE SETTLEMENT ....................................................................................... 5

    A. The Settlement Terms.............................................................................. 5

    B. The Plan Of Allocation ........................................................................... 6

V. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................... 6

    A. Lead Plaintiff And Plaintiffs' Counsel Adequately Represented The Settlement Class........................................................................................................ 8

    B. The Settlement Is The Result Of Arm's-Length Negotiations Between Experienced Counsel ................................................................................................. 9

    C. The Relief Provided For The Settlement Class Is Adequate ............................... 10

        1. The Settlement Amount ................................................................. 10

        2. The Cost, Risk, And Delay Of Trial And Appeal.................................... 12

        3. Other Rule 23(e)(2)(C) Factors Support Preliminary Approval ............... 13

    D. All Settlement Class Members Are Treated Equitably........................................ 15

    E. The Remaining Factors Are Satisfied ......................................................... 16

        1. The Extent Of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved ..................................................... 16

        2. Recommendations Of Experienced Counsel ......................................... 16

VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................ 17

VII.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE SETTLEMENT CLASS...................................................................... 19

VIII.  PROPOSED SETTLEMENT SCHEDULE ......................................................................... 20

IX.    CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

CASES

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................ 17, 18

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ............................................................................ 6, 7

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)........................................................ 9

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ............................................................................... 16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ............................................................................... 13

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) .................................................................. 12, 16

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)........................................................ 14

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) .................................................................. 16

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ..................................................... 15

*In re Groupon, Inc. Sec. Litig.*,
  2016 WL 3896839 (N.D. Ill. July 13, 2016)........................................................ 16

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................................................... 9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................... 12

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 9

*In re Northfield Labs., Inc. Sec. Litig.*,
  2012 WL 366852 (N.D. Ill. Jan. 31, 2012).................................................... 9, 19

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 13

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ......................................................................... 13

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ................................................................................ 6

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) .............................................................................. 17

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................................ 12

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   256 F.R.D. 586 (N.D. Ill. 2009) .......................................................................... 18

*McCue v. MB Fin., Inc.*,
   2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) ........................................................ 10

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ...................................................................... 14

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ................................................................................ 18

*Roth v. Aon Corp.*,
   238 F.R.D. 603 (N.D. Ill. 2006) ..................................................................... 17, 19

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................. 12

*Shah v. Zimmer Biomet Holdings, Inc.*,
   2020 WL 2570050 (N.D. Ind. May 21, 2020) ..................................... 12, 17, 18, 19

*Swinton v. SquareTrade, Inc.*,
   2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ........................................................ 8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ................................................................................ 8

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
   2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ..................................................... 17

*Trief v. Dun & Bradstreet Corp.*,
  840 F. Supp. 277 (S.D.N.Y. 1993) ...................................................................................... 13

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ............................................................................................. 16

STATUTES

15 U.S.C. § 78u-4(a)(4) ........................................................................................................... 15

RULES

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

v

Lead Plaintiff Fadi E. Rahal ("Lead Plaintiff"),[1] on behalf of himself and the proposed Settlement Class, submits this memorandum of law in support of his unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").

## I.   PRELIMINARY STATEMENT

The Parties have reached an agreement to settle this Action in exchange for a $13,500,000 non-reversionary, all cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class[2] in exchange for the dismissal of all claims against Defendants Groupon, Inc. ("Groupon" or the "Company"), Rich Williams, and Melissa Thomas (collectively, "Defendants"). This is an excellent result for the Settlement Class, and it is both substantively and procedurally fair. Accordingly, Lead Plaintiff respectfully moves this Court for preliminary approval of the proposed Settlement.

The Settlement was reached after more than two years of hotly contested litigation, during which Lead Counsel, *inter alia*: (i) conducted a comprehensive investigation into the allegedly wrongful acts, including the retention of a private investigator and consultation with accounting and finance experts; (ii) drafted two complaints, including the 69-page Second Amended Class Action Complaint for violation of the Federal Securities Laws (the "SAC"); (iii) engaged in voluminous briefing related to Defendants' motions to dismiss; (iv) pursued fact discovery, which included serving and responding to party discovery requests and pursuing extensive third-party

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Leanne H. Solish ("Solish Decl."), filed concurrently herewith.

[2] Subject to certain exclusions, the "Settlement Class" is defined as all persons and entities who or that, between July 30, 2019, and February 18, 2020, inclusive, purchased or otherwise acquired Groupon common stock and were damaged thereby. *See* Stipulation ¶1(ss).

1

discovery; (v) reviewed approximately 90,000 pages of documents produced by Defendants and third-parties; (vi) produced discovery to Defendants; (vii) drafted and were on the verge of filing class certification papers which included a report concerning market efficiency prepared by a financial expert; (viii) drafted a detailed mediation statement which included relevant exhibits and addressed both liability and damages; (ix) participated in a full-day mediation session before Jed D. Melnick, Esq., of JAMS; (x) engaged in negotiations regarding the terms of the proposed Settlement; (xi) worked with a financial damages expert to craft a plan of allocation that treats Lead Plaintiff and all other Settlement Class members fairly; and (xii) engaged in confirmatory discovery by conducting an in-person interview of Groupon's Vice President of Finance, David Belmont. The Settlement is, therefore, the result of arm's-length negotiations, conducted by well-informed and experienced counsel, and does not favor Lead Plaintiff over other Settlement Class Members.

Lead Plaintiff and Lead Counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Class. As such, Lead Plaintiff respectfully requests that the Court grant preliminary approval.

## II. NATURE OF THE ACTION

This is a class action asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Lead Plaintiff alleges that Defendants made public statements that omitted material adverse information concerning: (i) Groupon's Goods division ("Goods"); (ii) Groupon's Select loyalty program ("Select"); and (iii) Groupon's overall financial performance, including the Company's guidance. Specifically, Lead Plaintiff alleges that Defendants violated the federal securities laws by making materially false and misleading statements about Select and its purported success in boosting purchase frequency and generating

incremental profits, as well as misrepresenting the extent of Goods' deterioration. Lead Plaintiff also alleges that, as a result of these misrepresentations, Groupon's stock was artificially inflated.

Lead Plaintiff alleges corrective disclosures over the course of two days: (i) Groupon's Fourth Quarter and Fiscal Year 2019 Results announced following market close on February 18, 2020; and (ii) Groupon's February 19, 2020 conference call. In response to these disclosures, on February 19, 2020, Groupon's stock price declined by $1.35 per share, or approximately 44.26%, from $3.05 per share to close at $1.70 per share. Defendants deny these allegations.

## III.    PROCEDURAL HISTORY

### A.    The Initial Complaint And Lead Plaintiff Appointment

This Action was commenced on April 28, 2020. ECF No. 1. On August 1, 2020, the Court appointed Fadi E. Rahal as Lead Plaintiff for the Action; and approved Lead Plaintiff's selection of the law firms of Glancy Prongay & Murray LLP ("GPM") and Kirby McInerney LLP ("KM") as Lead Counsel and Pomerantz LLP as Liaison Counsel for the class. ECF No. 41.

### B.    Lead Counsel's Investigation, First And Second Amended Complaints And Defendants' Motions To Dismiss

Following their appointment, Lead Counsel conducted an investigation into Groupon's allegedly wrongful acts, which included, *inter alia*, reviewing and analyzing: (a) Groupon's SEC filings; (b) public reports, blog posts, research reports prepared by securities analysts, and news articles concerning the Company; (c) Groupon's investor call transcripts; and (d) other publicly available material related to Defendants. Prior to filing the amended complaints, Lead Counsel worked closely with an investigator to develop factual allegations based on interviews with former Groupon employees. Lead Counsel also consulted with loss causation and damages experts to develop a theory of classwide damages. In addition, Lead Counsel consulted with an accounting expert to evaluate claims relating to Groupon's guidance.

On September 22, 2020, Lead Plaintiff filed his Amended Class Action Complaint for Violation of the Federal Securities Laws (the "FAC") asserting claims against all Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. The FAC alleged that Defendants made public statements that omitted material adverse information concerning: (i) Goods; (ii) Select; and (iii) Groupon's overall financial performance. The FAC further alleged that the prices of Groupon's publicly-traded securities were artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed. ECF No. 43. On November 23, 2020, Defendants moved to dismiss the FAC. ECF Nos. 48-49. On April 28, 2021, the Court granted Defendants' motion to dismiss without prejudice. ECF No. 64.

On May 19, 2021, Lead Plaintiff moved for leave to amend the FAC along with a proposed second amended complaint. ECF Nos. 66-68. On June 23, 2021, Defendants filed an opposition to Lead Plaintiff's motion for leave to amend. ECF No. 70. On June 28, 2021, Lead Plaintiff filed and served a motion for leave to file a reply brief in support of his motion for leave to amend. ECF Nos. 71-72. Defendants opposed this motion (ECF No. 73) and Lead Plaintiff filed a reply brief in further support thereof. ECF No. 75.

On August 1, 2021, the Court granted Lead Plaintiff's motion for leave. ECF No. 79. On August 12, 2021, Lead Plaintiff filed the SAC, again asserting claims under the Exchange Act and Rule 10b-5 against Defendants based upon a similar set of allegations as the FAC. ECF No. 80. On September 24, 2021, Defendants answered the SAC. ECF No. 86.

C.    Discovery

Lead Plaintiff actively pursued fact discovery from Defendants. The Parties negotiated an agreed confidentiality order and a protocol to govern the production of electronically stored information and other documents. Lead Plaintiff propounded Requests for Production of

4

Documents on Defendants, and also served seven subpoenas *duces tecum* on third-parties. Thereafter, Lead Plaintiff engaged in meet and confer conferences over the span of several months. Lead Counsel obtained more than 23,300 documents (approximately 90,000 pages) from Defendants and five third-parties, which were reviewed and analyzed. Lead Plaintiff also responded to document requests and interrogatories served by Defendants. In addition, Lead Plaintiff interviewed David Belmont (Groupon's Vice President of Finance) prior to executing the Stipulation.

### D.      Mediation

While discovery was ongoing, the Parties agreed to mediate. On March 15, 2022, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before Jed D. Melnick, Esq. of JAMS, an experienced mediator who has facilitated dozens of securities class actions settlements. In advance of that session, the Parties exchanged detailed mediation statements, including documents they deemed relevant, which addressed the issues of liability and damages. The session ended without an agreement to settle. Over the next several weeks, however, Mr. Melnick conducted further discussions with the Parties, which culminated in a mediator's recommendation to resolve the Action for $13,500,000. The Parties accepted Mr. Melnick's recommendation on April 21, 2022.

## IV.      THE SETTLEMENT

### A.      The Settlement Terms

The Settlement requires Defendants to make a $13,500,000 cash payment into an interest-bearing Escrow Account for the benefit of the Settlement Class.[3] The Net Settlement Fund is

---

[3] In exchange for the Settlement Amount, Settlement Class Members will release the "Released Plaintiff's Claims." *See* Stipulation at ¶¶ 5 (release) and 1(nn) (defining "Released Plaintiff's Claims").

defined as the Settlement Amount, plus accrued interest, less: (i) Taxes; (ii) Notice and Administration Costs; (iii) Litigation Expenses awarded by the Court; and (iv) attorneys' fees awarded by the Court. The Net Settlement Fund will be distributed among Settlement Class Members who submit valid Claim Forms ("Authorized Claimants") pursuant to the proposed Plan of Allocation. If the Settlement is approved, the Settlement Amount is non-reversionary.

### B. The Plan Of Allocation

The proposed Plan of Allocation is comparable to plans of allocation approved in numerous other securities class actions. The Plan of Allocation allocates the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms on a *pro rata* basis based on the amount of each Authorized Claimant's Recognized Claim. The formula for determining each Authorized Claimant's Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged violations of the federal securities laws as opposed to losses caused by market, industry, or other factors unrelated to the allegations. The formula also takes into consideration when each Authorized Claimant purchased and/or sold Groupon common stock, the transaction's price, and requires that Groupon common stock be held over the alleged corrective disclosure date in order for an Authorized Claimant to have a Recognized Claim.

### V. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires court approval for any settlement of a class action, and courts within this Circuit recognize that public policy strongly favors settlements, especially in complex class actions. *See, e.g.*, *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). "District court review of a class action settlement proposal is a two-step process." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). "The first step is a preliminary, pre-notification hearing to determine whether the proposed

6

settlement is within the range of possible approval." *Id*. "If the district court finds a settlement proposal within the range of possible approval, it then proceeds to the second step in the review process, the fairness hearing." *Id*. "Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard." *Id*.

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." With respect to Rule 23(e)(2)—which governs final approval—courts now consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's-length;

(C)    is the relief provided for the class adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904 at 919).

These factors are not exclusive. The four factors set forth in Rule 23(e)(2) are not intended

to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at 918; *see also Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific considerations in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments. However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement."). For this reason, the traditional factors that are utilized by courts in the Seventh Circuit to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> In order to evaluate the fairness of a settlement, a district court must consider the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In sum, although the specific factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918). As discussed below, the proposed Settlement meets the aforementioned requirements and warrants preliminary approval.

### A. Lead Plaintiff And Plaintiffs' Counsel Adequately Represented The Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, there can be no dispute that Lead Plaintiff and Plaintiff's Counsel adequately represented the Settlement Class.

First, Lead Plaintiff's claims are typical of, and coextensive with, the claims of the Settlement Class. Lead Plaintiff's interest in obtaining the largest possible recovery in this Action

is aligned with the interests of other Settlement Class Members. *See In re Northfield Labs., Inc. Sec. Litig.*, 2012 WL 366852, at *3 (N.D. Ill. Jan. 31, 2012) (finding adequacy where lead plaintiffs and class members shared the same interest—obtaining the maximum amount of recovery). In addition, Lead Plaintiff directly contributed to the Action by overseeing the litigation, communicating regularly with counsel, producing documents to Defendants, and participating in settlement discussions.

Second, Lead Plaintiff retained counsel that are highly experienced in securities litigation, and who have a long successful track record of representing investors in such cases. *See* ECF No. 17-D (KM firm resume); ECF No. 17-E at 13 (GPM firm resume).[4] Lead Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the strengths and weaknesses of the case prior to settling the Action (*see* Section III, *supra*) (detailing counsel's extensive investigation into the Company, briefing on motion to dismiss, discovery efforts, and hard-fought mediation efforts). Accordingly, this factor supports preliminary approval. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

**B. The Settlement Is The Result Of Arm's-Length Negotiations Between Experienced Counsel**

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's-length." The Settlement was negotiated by counsel with extensive experience in securities

---

[4] *See also Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding that "Lead Counsel has also adequately represented the class. [GPM] has significant experience in securities class action lawsuits."); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) (finding KM to be a counsel "who has extensive experience prosecuting complex securities class actions. . .").

9

litigation, who were well versed in the strengths and weaknesses of their respective positions, under the auspices of an experienced mediator who ultimately made a mediator's recommendation that the Parties accepted. *See McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *1, *2 (N.D. Ill. Mar. 6, 2015) (preliminarily approving settlement and finding that settlement was the "result of extensive, arms'-length negotiations by [well-versed] counsel[,]" with the assistance of an experienced mediator, "reinforc[ing] the non-collusive nature of the settlement").

## C.    The Relief Provided For The Settlement Class Is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).

### 1.    The Settlement Amount

The $13,500,000 all cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class. Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed at both summary judgment and after a jury trial, and if the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation—*i.e.*, Lead Plaintiff's **best-case scenario**—the total **maximum** damages would be approximately $140 million for purchasers of Groupon common stock. Thus, the $13.5 million Settlement Amount represents approximately 9.6% of the total **maximum** damages **potentially** available to Groupon shareholders in this Action. A recovery of 9.6% is well above the median recovery in securities class action settlements.[5]

_____

[5] *See* Solish Decl., Ex. 2 (excerpt from Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at p. 24 (Fig. 22)) (median recovery in securities class actions in 2021 was approximately 1.8% of estimated

Moreover, Defendants had raised a number of credible arguments concerning, among other things, falsity, scienter, loss causation and damages that—if accepted—would have substantially reduced, or completely eliminated, recoverable damages. For example, Defendants argued that Lead Plaintiff failed to plead any actionable misrepresentations because the adversity experienced by Goods had actually been adequately disclosed, and Defendants' statements concerning Select were not materially misleading since (a) Select was a new experimental program that accounted for a small portion of Groupon's business, and (b) the challenged statements concerning Select were inactionable "puffery." Defendants also challenged scienter, arguing that the "trends" and conditions that they allegedly omitted did not exist until after the SAC's alleged misrepresentations were made. If Defendants had prevailed on any or all of these issues, damages would have been significantly reduced, if not eliminated. Likewise, this Action originally asserted a class period between November 4, 2019 and February 18, 2020, but expanded the class period back to July 31, 2019 in the amended pleadings. If Defendants' renewed challenges to the July 31, 2019 statements were successful, total damages would fall to approximately $102.5 million and the recovery would equal 13.2% of damages.

Defendants would have also argued, *inter alia*, that the decline in Groupon's stock price following the alleged disclosures on February 18-19, 2020 was not caused by disclosures that corrected any of the alleged misrepresentations, but rather by disclosures of disappointing results in business units that were unrelated to Lead Plaintiff's claim. While Lead Plaintiff was confident he would be able to overcome Defendants' arguments, success was not guaranteed and a loss would have had significant negative consequences.

---

damages); *see also id.* at 23 (Fig. 21) (median recovery was 2.8% for securities class actions with estimated damages between $100-$199 million that settled between December 2012-December 2021).

In light of the aforementioned risks, there can be no doubt that the Settlement Amount is well within the range of reasonableness, weighing in favor of preliminary approval. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."); *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 2570050, at *4 (N.D. Ind. May 21, 2020) ("Any hiccup or win for Defendants along the way would have reduced that total possible amount of recovery.")

### 2. The Cost, Risk, And Delay Of Trial And Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017); *accord Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 585-86 (N.D. Ill. 2011).

Here, there is no question that continued litigation would have been costly, risky, and protracted. Indeed, even though Lead Plaintiff had surmounted the PSLRA's heightened pleading standard and automatic stay of discovery, major hurdles—such as class certification, summary judgment, trial, and the inevitable appeals remained. Success was not, of course, a forgone conclusion. For example, although Lead Plaintiff believed a motion for class certification would have been meritorious, Defendants would have most likely opposed the motion. Failure to obtain class certification would have eliminated any potential benefit to the Settlement Class. Even assuming class certification was achieved, the Court could have revisited certification at any time—presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports

12

approval of the Settlement"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Moreover, Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are by their very nature, expensive, risky, and uncertain. *See, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims").

In addition, any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation).

In sum, even if Lead Plaintiff prevailed after trial and appeals, there is no guarantee that he would have obtained a judgment greater than the $13.5 million Settlement. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

### 3. Other Rule 23(e)(2)(C) Factors Support Preliminary Approval

Under Rule 23(e)(2)(C), courts also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of

attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors generally support—and certainly *do not* weigh against—approval of the Settlement.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for accomplishing both tasks. Here, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the plan of allocation), after Court approval. Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[6] *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

*Second*, as disclosed in the Notice, Lead Counsel, will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. Attorneys' fees of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) are reasonable in light of the work performed and the results obtained.[7] More importantly, approval of the requested

---

[6] This is not a claims-made settlement. *See* Stipulation ¶ 13.

[7] *See, e.g.*, *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation.").

attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶ 16.

**Third**, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement pursuant to which Groupon may terminate the Settlement if Settlement Class Members having a certain number of shares that calculate to a Recognized Loss Amount under the Plan of Allocation exclude themselves from the Settlement Class. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.[8]

### D. All Settlement Class Members Are Treated Equitably

The Settlement does not provide preferential treatment to Lead Plaintiff or any other segment of the Settlement Class.[9] The proposed Plan of Allocation, which was developed by Lead Plaintiff's damages expert in consultation with Lead Counsel, is set forth in the Notice and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Ex. 1 at A-1 (Notice) at ¶¶ 50-68. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss Amount for each Authorized Claimant's purchases and/or sales of Groupon common stock during the Settlement Class Period for which adequate documentation is provided. *Id.* The calculation of each Settlement Class Member's Recognized Loss Amount under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when the Groupon common stock was purchased and sold, the purchase and sale price, and the estimated artificial inflation in the price

---

[8] *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

[9] Pursuant to the PSLRA, Lead Plaintiff may separately seek reimbursement of costs (including lost wages) incurred as a result of his representation of the Settlement Class. *See* 15 U.S.C. § 78u-4(a)(4).

of the common stock at the time of purchase and sale as determined by Lead Plaintiff's damages expert. A "Recognized Claim" under the Plan of Allocation shall be the sum of an Authorized Claimant's Recognized Loss Amounts for all shares of his, her or its Groupon common stock, and the Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Similar plans have repeatedly been approved by courts in this District.[10]

### E. The Remaining Factors Are Satisfied

#### 1. The Extent Of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved

The relevant inquiry here is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). As detailed in Section III, *supra*, the Parties were well aware of the strengths and weaknesses of the case at the time they negotiated the Settlement.

#### 2. Recommendations Of Experienced Counsel

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (courts are "entitled to rely heavily on the opinion of competent counsel"); *see also Accretive*, 773 F.3d at 864 (counsel accepting mediator's proposal were highly experienced and weighed in favor of affirming district court's approval of securities settlement). Consequently, Lead Counsel's belief in the fairness and reasonableness of the Settlement supports preliminary approval.

---

[10] *See e.g.*, *Great Neck*, 212 F.R.D. at 410 ("The plan is similar to those utilized in other securities class action cases and provides an equitable basis for distributing the fund to eligible class members."); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 865 (7th Cir. 2014) (similar); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *3 (N.D. Ill. July 13, 2016) (similar).

## VI.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Class actions may be certified for the purpose of settlement as long as the class meets the certification requirements under Rule 23. Rule 23(a) establishes four prerequisites to class certification: (i) "numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy of representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Such is the case here.

**Numerosity:** "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Teachers' Ret. Sys. of La. v. ACLN Ltd.*, 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004); *see also Zimmer Biomet*, 2020 WL 2570050, at *3 ("[N]umerosity is practically a foregone conclusion in a large securities class action like this."). Here, Groupon common stock was actively traded on NASDAQ and millions of shares were traded during the Settlement Class Period. Thus, the Settlement Class is likely so large that joinder of all class members is impractical.

**Common Questions:** Securities fraud cases like this one easily meet the commonality requirement. This element of the inquiry is satisfied by showing "a common nucleus of operative fact," which is found where "the defendants have engaged in standardized conduct towards members of the proposed class[.]" *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quotations and citation omitted). Here, common questions of law and fact relating to Lead Plaintiff's Exchange Act claims, include, *inter alia*, whether: (1) Defendants' representations to the investing public during the Settlement Class Period were "materially misleading"; (2) Defendants acted with scienter; and (3) the price of Groupon common stock was artificially inflated by Defendants' conduct. *Roth v. Aon Corp.*, 238 F.R.D. 603, 608 (N.D. Ill. 2006).

**Typicality:** Typicality is established where "the named representatives' claims have the

17

same essential characteristics as the claims of the class at large." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 598 (N.D. Ill. 2009) (quotations and citation omitted). Lead Plaintiff's claims are typical of the Settlement Class because his claims are based on the same alleged misrepresentations and omissions. Thus, any Settlement Class Member's claim arising from these misrepresentations and omissions will necessarily rely on the same course of events.

**Adequacy:** As explained in Section V.A., *supra*, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class. Indeed, there are no conflicts between Lead Plaintiff and the Settlement Class Members, and Lead Plaintiff has demonstrated his willingness to "vigorously pursue the litigation" through qualified counsel during the more than two years that they prosecuted this case until settlement. *Zimmer Biomet*, 2020 WL 2570050, at *3.

**Common Questions Predominate:** Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). Here, the existence of common questions predominates over individual issues because if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. *See Amchem*, 521 U.S. at 625 (predominance is "readily met" in securities fraud cases).

**Class Action Is Superior:** "[A] class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). "[C]lass actions are often the most fair and practical vehicle for plaintiffs' claims in securities fraud suits because those who have been injured are in a poor position to seek legal redress ... [B]ecause individual claims might be small in monetary value, they might not be prosecuted on an individual basis due to the costs of

18

litigation." *Roth*, 238 F.R.D. at 608. Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## VII.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Stipulation, together the "Notice Packet") to all Settlement Class Members who can be identified with reasonable effort, including through records maintained by Groupon, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities.[11] The Notice advises Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and Litigation Expenses. The Notice also provides specifics on the date, time and place of the Settlement Hearing, and sets forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and Litigation Expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to the mailing of the Notice Packet, the Summary Notice will be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.

The proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA. *See, e.g.*, *In re Northfield Labs.*, 2012 WL 366852; *Zimmer Biomet*, 2020 WL 2570050, at *5 (approving virtually identical notice program). Accordingly, the notice plan should be approved.

---

[11] Lead Plaintiff requests that the Court approve Epiq as Claims Administrator. Epiq has extensive experience in the administration of settlements of this type. *See* Solish Decl., Ex. 3.

## VIII. PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration:

| | |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement Website (the "Notice Date") | 20 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice | 10 business days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At least 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Forms | Postmarked 120 calendar days from the Notice Date |

## IX. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the motion and enter the [Proposed] Preliminary Approval Order.

Dated: June 27, 2022                    Respectfully Submitted,

**GLANCY PRONGAY & MURRAY LLP**

*/s/ Leanne H. Solish*
Robert V. Prongay
Kara M. Wolke
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
        kwolke@glancylaw.com
        lsolish@glancylaw.com

20

**KIRBY MCINERNEY LLP**
Thomas W. Elrod
Andrew M. McNeela
Ira M. Press
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Email: dhume@kmllp.com
      telrod@kmllp.com
      amcneela@kmllp.com
      ipress@kmllp.com

*Co-Lead Counsel for Lead Plaintiff*

**POMERANTZ LLP**
Louis C. Ludwig
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Email: lcludwig@pomlaw.com

*Liaison Counsel for Lead Plaintiff*

21

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On June 27, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of Illinois, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 27, 2022.


*s/ Leanne H. Solish*
Leanne H. Solish