**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-02581 |
| Plaintiff, | Honorable Matthew F. Kennelly |
| v. | |
| GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................ 1

II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ..... 3

III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ............................ 4

    A.    Plaintiff And His Counsel Adequately Represented The Settlement Class............ 4

    B.    The Settlement Is The Result Of Arm's-Length Negotiations Between Experienced Counsel Under The Auspices Of A Well-Respected Mediator ......... 5

    C.    The Relief Provided For The Settlement Class Is Adequate ................................. 6

        1.    The Strength Of Plaintiff's Claims Compared To The Settlement Amount ...................................................................................... 7

        2.    The Cost, Risk, And Delay Of Trial And Appeal...................................... 8

        3.    Other Factors Established By Rule 23(e)(2)(C) Support Final Approval ................................................................................................ 11

    D.    All Settlement Class Members Are Treated Equitably........................................ 12

    E.    The Remaining Factors Are Satisfied ................................................................ 13

        1.    The Extent Of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved Strongly Supports Final Approval .......................................................................... 13

        2.    Recommendations Of Experienced Counsel ........................................... 14

IV.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS .............. 14

V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.................................. 14

VI.    CONCLUSION.................................................................................................. 15

i

## TABLE OF AUTHORITIES

<u>CASES</u>

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir.1982) ............................................................................................... 14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) .............................................................................................. 10

*Great Neck Capital Appreciation Inc. P'ship v. PricewaterhouseCoopers L.L.P.*,
  212 F.R.D. 400 (E.D. Wis. 2002) .................................................................................. 8, 15

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)...................................................................... 12

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................................. 13

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ................................................................... 12

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. June 20, 2012)......................................................................... 13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................................... 9

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................................... 10

*In re Northfield Labs., Inc. Sec. Litig.*,
  267 F.R.D. 536 (N.D. Ill. May 18, 2010) ............................................................................ 9

*In re Northfield Labs., Inc. Sec. Litig.*,
  2012 WL 366852 (N.D. Ill. Jan. 31, 2012) .......................................................................... 5

*In re Omnivision Tech., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................... 9

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................................... 5

*In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005).................................................................................. 2

*In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
   2016 WL 772785 (N.D. Ill. Feb. 29, 2016) .................................................................. 3

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...................................................................................... 3

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ........................................................................ 9

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) .................................................................................. 6

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ........................................................................... 11

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ............................................................ 14

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................................ 10

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................................... 7, 9, 13, 14

*Shah v. Zimmer Biomet Holdings, Inc.*,
   2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ............................................... 7, 14, 15

*Snyder v. Ocwen Loan Servicing, LLC*,
   2019 WL 2103379 (N.D. Ill. May 14, 2019) ............................................................... 5

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) ........................................................................... 10

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) .............................................................................. *passim*

STATUTES

15 U.S.C. § 78u-4(a)(4) .............................................................................................. 13

RULES

Fed. R. Civ. P. 23.................................................................................................. *passim*

Court-appointed Lead Plaintiff Fadi E. Rahal ("Plaintiff"), on behalf of himself and the Settlement Class, respectfully submits this memorandum of law in support of his motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlement ("Settlement") of the above-captioned action (the "Action"), and for approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation").[1]

## I.      PRELIMINARY STATEMENT

After over two years of hard-fought litigation, Plaintiff, through his counsel, obtained a $13,500,000 (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the Settlement Class.  As described below and in the Joint Declaration,[2] the proposed Settlement is an excellent result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.   Plaintiff estimates that the Settlement represents approximately 9.6% of the ***maximum*** damages potentially available in this Action, which is well above the median recovery in securities class action settlements.  *See* Ex. 6 at 24 (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages).  The Settlement is, therefore, substantively fair, reasonable and adequate.

Moreover, the process by which the Settlement was obtained evidences an arms-length process that supports a finding of procedural fairness.  As described in detail in the Joint

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated June 24, 2022 (ECF No. 110-1) (the "Stipulation"), or the concurrently-filed Joint Declaration of Leanne H. Solish and Thomas W. Elrod in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration").  Citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in and exhibits to, the Joint Declaration.

[2] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the procedural history of the Action; the prosecution of the claims at issue; the negotiations leading to the proposed Settlement; the risks and uncertainties of continued litigation; and a description of the services Plaintiff's Counsel provided for the benefit of the Settlement Class.

Declaration, prior to reaching the Settlement, Plaintiff's Counsel, *inter alia*:

- Conducted a thorough investigation of the claims asserted in the Action, which included an in-depth review and analysis of (i) Groupon's SEC filings, press releases, investor conference calls, and other public statements; (ii) public reports, blog posts, and news articles concerning Groupon; and (iii) research reports prepared by securities and financial analysts regarding Groupon; as well as working closely with an investigator to develop factual allegations based on interviews with former employees, and consultation with accounting and loss causation and damages experts;

- Drafted two comprehensive and detailed complaints—including the 69-page Second Amended Complaint—based on Plaintiff's Counsel's extensive investigation;

- Engaged in substantial briefing related to Defendants' motion to dismiss and Plaintiff's motion for leave to amend, including one round of briefing that resulted in the Court granting Plaintiff's motion in its entirety;

- Engaged in discovery, which included, *inter alia*, researching and drafting initial disclosures, propounding and responding to discovery requests and interrogatories, negotiating an agreed confidentiality order and a protocol to govern the production of electronically stored information and other documents, serving seven subpoenas *duces tecum* on third-parties, meeting and conferring with counsel for Defendants and third-parties, obtaining, reviewing and analyzing more than 23,300 documents (approximately 90,000 pages) from Defendants and five third-parties, and interviewing Groupon's Vice President of Finance prior to executing the Stipulation; and

- Exchanged documents and mediation briefs containing detailed analyses of the strengths, risks, and potential issues in the litigation with Defendants, participated in a full-day mediation session with an experienced neutral, and engaged in several days of further negotiations that culminated in a mediator's recommendation to resolve the Action for $13,500,000 in cash for the benefit of the Settlement Class. *See* ¶¶32-54.

In view of the foregoing, and as discussed in greater detail below, the Settlement was negotiated by well-informed Parties at arm's-length, and represents an excellent outcome for the Settlement Class. This is especially true when the recovery is juxtaposed against the many risks of continued litigation, including the very real risk of a substantially smaller recovery, or no recovery at all. *See* ¶¶59-75; *see also In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.,* 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the...litigation to assess the risks involved."). Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Plaintiff also moves for approval of the proposed Plan of Allocation of the Net Settlement

2

Fund. The Plan of Allocation was developed in conjunction with Plaintiff's market efficiency expert and is designed to fairly and equitably distribute the proceeds of the Net Settlement Fund to Settlement Class Members. ¶¶78-80. Plaintiff and his counsel believe that the Plan of Allocation is fair and reasonable and, as such, that it too should be approved.

## II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the settlement of claims brought on a class-wide basis. The standard for determining whether to grant final approval to a class action settlement is whether the settlement is "fundamentally fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).[3] This is because "[s]ettlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016).

Rule 23(e)(2), as amended on December 1, 2018, requires courts to consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's length;

(C)    whether the relief provided for the class is adequate, taking into account:
   i.    the costs, risks, and delay of trial and appeal;
   ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   iii.  the terms of any proposed award of attorneys' fees, including timing of payment;
   iv.   any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other.

---

[3] Unless otherwise noted, all emphasis is added and all internal quotations and citations are omitted.

3

Fed. R. Civ. P. 23(e)(2).

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, 919 (2018)).

The Rule 23(e)(2) factors are not intended to "displace" any previously adopted factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* For this reason, the traditional Seventh Circuit factors in *Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014), for evaluating whether a class action settlement is fair, reasonable and adequate under Rule 23—certain of which overlap with Rule23(e)(2)—are still relevant to the analysis. Those factors are:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong*, 773 F.3d at 863.

As discussed below, application of the factors set forth in Rule 23(e)(2), and the relevant, non-duplicative Seventh Circuit factors, confirm that the Settlement merits final approval.

## III.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.     Plaintiff And His Counsel Adequately Represented The Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, there can be no dispute that Plaintiff and Plaintiff's Counsel adequately represented the Settlement Class.

First, Plaintiff's claims are typical of, and coextensive with, the claims of the Settlement

4

Class. His interest in obtaining the largest possible recovery in this Action is aligned with the interests of other Settlement Class Members. *See In re Northfield Labs., Inc. Sec. Litig.*, 2012 WL 366852, at *3 (N.D. Ill. Jan. 31, 2012) (finding adequacy where lead plaintiffs and class members shared the same interest—obtaining the maximum amount of recovery); *see also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Additionally, Plaintiff significantly contributed to the Action by overseeing the litigation, communicating regularly with counsel, producing documents to his attorneys, and participating in settlement discussions with Plaintiff's Counsel. *See* Ex. 2.

Second, Plaintiff retained counsel that are highly experienced in securities litigation, and who have a long successful track record of representing investors in such cases. *See* Exs. 3-C, 4-C, & 5-C (firm résumés). As described above and in the Joint Declaration, Plaintiff's Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the strengths and weaknesses of the case prior to settling the Action. *See* ¶¶30-54 (detailing counsel's extensive investigation into Groupon, substantial briefing at the pleading stage, discovery efforts, and hard-fought mediation efforts); *see also Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019) (finding adequacy of representation of the class under 23(e)(2)(A) where named plaintiffs "participated in the case diligently" and class counsel "fought hard throughout the litigation and pursued mediation when it appeared to be an advisable and feasible alternative").

**B.     The Settlement Is The Result Of Arm's-Length Negotiations Between Experienced Counsel Under The Auspices Of A Well-Respected Mediator**

In reviewing a class action settlement, the court should next consider whether the settlement was "negotiated at arm's-length." Fed R. Civ. P. 23(e)(2)(B). This includes the court's

consideration of other related circumstances to ensure the "procedural" fairness of a settlement, including (i) "the opinion of competent counsel";[4] (ii) "stage of the proceedings and the amount of discovery completed";[5] and (iii) the involvement of a mediator. All of these considerations support approval of the Settlement.

Here, the Settlement was negotiated by counsel with extensive experience in securities litigation, who were well versed in the strengths and weaknesses of their respective positions, under the auspices of an experienced mediator who ultimately made a mediator's recommendation that the Parties accepted. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) ("a settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate"); *see also Wong*, 773 F.3d at 864 (settlement "was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated").

C. **The Relief Provided For The Settlement Class Is Adequate**

The Court next considers whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C) encompasses two of the factors traditionally considered by the Seventh Circuit when evaluating a proposed class action settlement: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; and (2) the complexity, length, and expense of further litigation. *See Wong*, 773 F.3d at 863-64. As demonstrated below, these factors support approval of the Settlement under Rule 23(e)(2)(C).

---

[4] *See Wong*, 773 F.3d at 863 (fifth factor).

[5] *See id.* (sixth factor).

### 1. The Strength Of Plaintiff's Claims Compared To The Settlement Amount

The $13,500,000 cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant final approval of the Settlement. Plaintiff's damages expert estimates that if Plaintiff had fully prevailed at both summary judgment and after a jury trial, and if the Court and jury accepted Plaintiff's damages theory, including proof of loss causation—*i.e.*, the **best-case scenario**—the total **maximum** damages would be approximately $140 million. Thus, the $13.5 million Settlement Amount represents approximately 9.6% of the total maximum damages **potentially** available to Groupon shareholders in this Action. ¶59. A recovery of 9.6% is well above the median recovery in securities class action settlements.[6] *See also Wong*, 773 F.3d at 862-64 (rejecting class member's appeal of $14 million settlement for recovering "too low a percentage of class members' potential damages"); *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *5 (N.D. Ind. Sept. 18, 2020) (noting that a settlement recovering 8% of maximum damages was a "superb result for the class"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583-84 (N.D. Ill. 2011) (approving a $9.5 million settlement representing approximately 10% of the class's maximum potential recovery, and concluding that "the settlement provides immediate value to the Class Members that is well within the range of—and may in fact significantly exceed—their expected recovery from proceeding to trial.").

This was, however, Plaintiff's best-case scenario. Defendants raised a number of credible arguments concerning, among other things, liability, loss causation and damages that—if accepted—would have substantially reduced, or completely eliminated, recoverable damages. For

---

[6] *See* Ex. 6 (excerpt from Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at p. 24 (Fig. 22)) (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages); *see also id.* at 23 (Fig. 21) (median recovery was 2.8% for securities class actions with estimated damages between $100-$199 million that settled between December 2012-December 2021).

example, Defendants argued that Plaintiff failed to plead any actionable misrepresentations because the adversity experienced by Goods had actually been adequately disclosed, and Defendants' statements concerning Select were not materially misleading since (a) Select was a new experimental program that accounted for a small portion of Groupon's business, and (b) the challenged statements concerning Select were inactionable "puffery." ¶66. Defendants also challenged falsity and scienter, by arguing that the "trends" and conditions that they allegedly omitted did not exist until after the alleged misrepresentations were made. ¶67. If Defendants had prevailed on any or all of these issues, damages would have been significantly reduced, if not eliminated.

Moreover, Defendants also argued or would have argued, *inter alia*, that the decline in Groupon's stock price following the alleged disclosures on February 18-19, 2020 was not caused by disclosures that corrected any of the alleged misrepresentations, but rather by disclosures of disappointing results in business units that were unrelated to Plaintiff's claims. ¶70. While Plaintiff was confident he would be able to overcome Defendants' arguments, success was not guaranteed and a loss would have had significant negative consequences.

In light of the aforementioned risks, there can be no doubt that the Settlement Amount is well within the range of reasonableness, weighing in favor of final approval. *See Great Neck Capital Appreciation Inc. P'ship v. PricewaterhouseCoopers L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) (approving settlement and noting that the "factual and legal issues in the case are not simple, and a jury would have to evaluate conflicting evidence on such issues as scienter, materiality, causation and damages, as well as conflicting expert testimony.").

### 2. The Cost, Risk, And Delay Of Trial And Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the continuing risks of continued litigation, including the strengths and weaknesses

of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017); *accord Fifth Third Bank*, 805 F. Supp. 2d at 585-86.

Here, continued litigation would have been costly, risky, and protracted. Indeed, even though Plaintiff had surmounted the PSLRA's heightened pleading standard and automatic stay of discovery and was in fact discovery, Plaintiff's next major litigation hurdle was obtaining class certification. Although Plaintiff believed a motion for class certification would be meritorious, Defendants planned to contest class certification, and thus it was not a foregone conclusion. ¶73; *see also In re Northfield Labs., Inc. Sec. Litig.*, 267 F.R.D. 536, 549 (N.D. Ill. May 18, 2010) (denying class certification). Had Plaintiff failed to obtain class certification, any potential benefit to the Settlement Class would have been eliminated. Even assuming class certification was achieved, the Court could have revisited certification at any time—presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks of obtaining and maintaining class certification support approval of the Settlement. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("the uncertainty surrounding class certification supports approval of the Settlement").

Furthermore, even if Plaintiff prevailed at the class certification stage, he would still have to ***prove*** his claims. This would be no small task, and Plaintiff and Plaintiff's Counsel recognize the significant risk, time, and expense involved in prosecuting Plaintiff's claims against Defendants through completion of fact and expert discovery, summary judgment, trial, and

9

subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. ¶74. Indeed, Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are by their very nature, expensive, risky, and uncertain. *See, e.g.*, *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) ("Defendants are highly motivated to defend these cases vigorously…. [C]ontinued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time."); *Wong*, 773 F.3d at 864 ("Further litigation [of securities action] almost certainly would have involved complex and lengthy discovery and expert testimony. Insurance proceeds to fund a settlement or judgment were a limited, wasting asset, *i.e.*, further defense costs would have reduced those funds").

In addition, any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).[7]

In sum, even if Plaintiff prevailed after trial and appeals, there is no guarantee that he would have obtained a judgment greater than the $13.5 million Settlement. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery

---

[7] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs).

by the class members.").  By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

### 3. Other Factors Established By Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors supports approval of the Settlement or is neutral and does not suggest any basis to conclude the Settlement is inadequate.

*First*, the Net Settlement Fund will be allocated to Settlement Class Members who submit valid Claim Forms in accordance with the Plan of Allocation.  *See* § V, *infra*.  Epiq Class Action & Claims Solutions, Inc.—the Claims Administrator selected by Lead Counsel and approved by the Court—will process claims under Lead Counsel's guidance, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

---

[8] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶13.

***Second***, the relief provided to the Settlement Class is also adequate when considering the proposed award of attorneys' fees. As discussed in the accompanying fee memorandum, the proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. *See, e.g.*, *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *10 (S.D. Ill. Dec. 16, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

***Third***, as noted in the preliminary approval papers, the Parties entered into a confidential agreement pursuant to which Groupon may terminate the Settlement if Settlement Class Members having a certain number of shares that calculate to a Recognized Loss Amount under the Plan of Allocation exclude themselves from the Settlement Class in accordance with the requirements for requesting exclusion provided in the Notice. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (approving class action settlement and noting that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### D. All Settlement Class Members Are Treated Equitably

The Settlement "treats class members equitably relative to each other." Rule 23(e)(2)(D). As discussed in § V, *infra*, under the Plan of Allocation each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Because the Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class,

or the Plaintiff, this factor supports final approval. *See Wong*, 773 F.3d at 865 (examining and affirming plan of allocation that compensated class members based on timing and price of class period stock purchases).[9]

### E. The Remaining Factors Are Satisfied

#### 1. The Extent Of Discovery Completed And The Stage Of The Proceedings At Which Settlement Was Achieved Strongly Supports Final Approval

The relevant inquiry under this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 966 (N.D. Ill. 2011). The parties need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable an intelligent appraisal of the settlement. *See id.* at 967; *Wong*, 773 F.3d at 864 864 (affirming approval of settlement where formal discovery had not commenced, but plaintiff had access to extensive public documents and potential witness interviews); *Schulte*, 805 F. Supp. 2d at 587 (finding the absence of formal pre-settlement discovery did not weigh against approval of settlement and noting that the "pertinent inquiry is what facts and information have been provided").[10]

Here, as set forth in the Joint Declaration, by the time the Settlement was reached, Plaintiff and his counsel possessed information sufficient to intelligently assess the strengths and weaknesses of the case and evaluate the merits of the Settlement. *See* ¶¶32-44. Accordingly, this factor weighs in favor of final approval.

---

[9] Plaintiff separately seeks reimbursement of costs (including lost wages) incurred as a result of his representation of the Settlement Class. *See* 15 U.S.C. § 78u-4(a)(4).

[10] *See also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. June 20, 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

### 2. Recommendations Of Experienced Counsel

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir.1982) (courts are "entitled to rely heavily on the opinion of competent counsel"); *see also Wong*, 773 F.3d at 864 (counsel accepting mediator's proposal were highly experienced and weighed in favor of affirming district court's approval of securities settlement). Consequently, Lead Counsel's belief in the fairness and reasonableness of the Settlement supports final approval.

## IV. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

The Court's July 6, 2022 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 113, ¶¶2-3. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiff's Preliminary Approval Brief (*see* ECF No. 109 at 17-19), Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## V. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Plaintiff also seeks approval of the Plan of Allocation of settlement proceeds detailed in the Notice. *See* Ex. 1-A (Notice) at ¶¶50-68. Assessment of a plan of allocation of in a class action under Rule 23 is governed by "[t]he same standards of fairness, reasonableness and adequacy that apply to the settlement[.]" *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis in order to be fair and reasonable." *Shah*, 2020 WL 5627171, at *6. Generally, an allocation method that "is tailored to the facts of [the] case [] is fair, reasonable, and adequate." *Fifth Third Bank*, 805 F. Supp. 2d at 590.

Here, the proposed Plan of Allocation, which was developed by Plaintiff's market efficiency expert in consultation with Lead Counsel, is set forth in the Notice and provides a fair and reasonable method of allocating the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* Ex. 1-A (Notice) at ¶¶50-68. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss amount for each Settlement Class Member's purchases and/or sales of Groupon common stock during the Settlement Class Period for which adequate documentation is provided. *Id.* The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation will be based on several factors, including when the shares were purchased and sold, the purchase and sale price of the shares, and the estimated artificial inflation in the price of the shares at the time of purchase and at the time of sale as determined by Plaintiff's market efficiency expert. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Loss. Similar plans have repeatedly been approved by courts in this District. *See Great Neck Capital*, 212 F.R.D. at 410 ("The plan is similar to those utilized in other securities class action cases and provides an equitable basis for distributing the fund to eligible class members."); *Shah*, 2020 WL 5627171, at *6 (approving substantially similar plan of allocation).

## VI.   CONCLUSION

For the reasons stated in this memorandum and in the Joint Declaration, Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and certify the Settlement Class for purposes of settlement.

Dated: September 8, 2022

Respectfully Submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Leanne H. Solish*
Robert V. Prongay
Kara M. Wolke
Joseph D. Cohen
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
  kwolke@glancylaw.com
  jcohen@glancylaw.com
  lsolish@glancylaw.com

**KIRBY MCINERNEY LLP**
Thomas W. Elrod
Andrew M. McNeela
Ira M. Press
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Email: telrod@kmllp.com
  amcneela@kmllp.com
  ipress@kmllp.com

*Co-Lead Counsel for Lead Plaintiff*

**POMERANTZ LLP**
Louis C. Ludwig
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Email: lcludwig@pomlaw.com

*Liaison Counsel for Lead Plaintiff*

16

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

*s/ Leanne H. Solish*
Leanne H. Solish