**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, <br><br> Defendants. | Case No. 1:20-cv-02581 <br><br> Honorable Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE
AND WARRANT COURT APPROVAL ..................................................................4

    A.    Counsel Are Entitled To An Award Of Attorneys' Fees From The
Common Fund ..............................................................................................4

    B.    The Requested Attorneys' Fee Award Should Be A Percentage Of The
Fund .............................................................................................................4

    C.    The Requested Fee Award Is Fair And Reasonable Under Applicable
Seventh Circuit Factors ...............................................................................6

        1.    A 33⅓% Award Is Consistent With Seventh Circuit Authority ..................7

        2.    The Quality Of Legal Services Rendered And The Amount Of
Work ................................................................................................9

        3.    The Market Rewards Risk, And This Case Was Tremendously
Risky .............................................................................................10

        4.    The Stakes Of The Action Favor The Requested Fees .............................12

        5.    Reaction Of The Settlement Class Supports The Requested Award ........12

        6.    The Fee Request Is Supported By Lead Plaintiff.....................................13

    D.    The Requested Fee Is Also Reasonable Using the Lodestar Method ....................13

III.   PLAINTIFF'S COUNSEL'S EXPENSES SHOULD BE REIMBURSED ......................14

IV.   LEAD PLAINTIFF SHOULD BE AWARDED HIS COSTS AND EXPENSES............14

V.    CONCLUSION..................................................................................................15

## TABLE OF AUTHORITIES

CASES

*Abante Rooter and Plumbing, Inc. v. Oh Ins. Agency*,
2019 WL 10248700 (N.D. Ill. Dec. 10, 2019) ......................................................... 8

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ....................................................... 8, 14

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................................ 2

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .................................................. 7, 10, 14

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ..................................................... 6, 15

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .............................................................................................. 4

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ........................................................................ 6, 15

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) ......................................................................... 4, 5, 10

*Florin v. Nationsbank of Ga., N.A.*,
60 F.3d 1245 (7th Cir. 1995) ............................................................................. 10

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ............................................................................... 5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................................... 2

*Goldsmith v. Tech. Sols. Co.*,
1995 WL 17009594 (N.D. Ill. Oct. 11, 1995) ....................................................... 7

*Hale v. State Farm Mut. Auto. Ins. Co.*,
2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ................................................. *passim*

*Heekin v. Anthem, Inc.*,
2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ............................................ 8, 12, 15

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................................ 15

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ................................................................................................ 5

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
80 F. Supp. 3d 838 (N.D. Ill. Feb. 20, 2015) .................................................................. 6, 11

*In re Gould Sec. Litig.*,
727 F. Supp. 1201 (N.D. Ill. 1989) ...................................................................................... 10

*In re Marsh & McLennan Cos. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. 2009) ..................................................................................... 15

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013) ............................................................................ 12

*In re Signet Jewelers Limited Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................................................................... 15

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ...................................................................................... *passim*

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) ................................................................................................ 6

*In re Trans Union Corp. Privacy Litig.*,
2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) .......................................................................... 5

*In re Worldcom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................................... 6

*In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................ 2, 11, 12

*Jorling v. Anthem, Inc.*,
836 F. Supp. 2d 821 (S.D. Ind. 2011) ................................................................................... 2

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ................................................................................................ 5

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................................... 11

iii

*Meyenburg v. Exxon Mobil Corp.*,
2006 WL 2191422 (S.D. Ill. July 31, 2006) ................................................................. 7

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ...................................................................................... 8

*Redman v. RadioShack Corp*,
768 F.3d 622 (7th Cir. 2014) ...................................................................................... 8

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .......................................................... 7, 8

*Sanchez v. Roka Akor Chicago LLC*,
2017 WL 1425837 (N.D. Ill. Apr. 20, 2017) ............................................................. 9

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................... 12

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ........................................................................... 4, 10, 11

*Spano v. Boeing Co.*,
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ....................................................... 13, 14

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ............................................................................. 4, 6, 9

*Swift v. Direct Buy, Inc.*,
2013 WL 5770633 (N.D. Ind. Oct. 24, 2013) ............................................................ 7

*Taubenfeld v. AON Corp.*,
415 F.3d 597 (7th Cir. 2005) ............................................................................... 7, 12

*Will v. Gen. Dynamics Corp.*,
2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ........................................................... 15

*Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629 (7th Cir. 2011) ............................................................................... 6, 13

*Young v. Cty. of Cook*,
2017 WL 4164238 (N.D. Ill. Sept 20, 2017) ............................................................. 7

STATUTES

15 U.S.C. § 78u-4(a)(4) .......................................................................................................... 1, 14

15 U.S.C. § 78u-4(a)(6) ............................................................................................................... 6

15 U.S.C. § 78u-4(b)(3)(B).......................................................................................................... 11

Court-appointed Lead Counsel, Glancy Prongay & Murray LLP and Kirby McInerney LLP (collectively, "Lead Counsel"), respectfully submit this memorandum of law in support of their Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.[1]

## I. PRELIMINARY STATEMENT

Plaintiff's Counsel[2] succeeded in obtaining an all cash, non-reversionary settlement of $13,500,000 (the "Settlement") for the benefit of the Settlement Class in the above-captioned action (the "Action"). This is an outstanding outcome in the face of substantial risks and is the result of Plaintiff's Counsel's vigorous, persistent, and skilled efforts. Lead Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (*i.e.*, $4,500,000, plus interest accrued thereon), and reimbursement of $255,227.53 in Litigation Expenses. The Litigation Expenses consist of $250,227.53 in out-of-pocket costs incurred by Plaintiff's Counsel while prosecuting the Action, and $5,000 to Lead Plaintiff for reimbursement of the reasonable costs (including the cost of time spent) incurred in prosecuting the Action on behalf of the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

As detailed below and in the accompanying Joint Declaration,[3] the Settlement represents

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated June 24, 2022 (ECF No. 110-1) (the "Stipulation"), or the concurrently-filed Joint Declaration of Leanne H. Solish and Thomas W. Elrod in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration"). Citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in and exhibits to, the Joint Declaration. All internal quotations and citations are omitted unless otherwise stated.

[2] Plaintiff's Counsel consists of Lead Counsel and Court-appointed liaison counsel Pomerantz LLP. ¶3, n.2.

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the procedural history and the prosecution of the claims at issue; the negotiations leading to the proposed Settlement; the risks and uncertainties of continued litigation; and a description of the services Plaintiff's Counsel have provided for the benefit of the Settlement Class.

an excellent recovery for the Settlement Class under the circumstances. In the absence of a settlement, the Action likely would have continued for years, through the completion of fact discovery, expert discovery, summary judgment, trial, and likely appeals. Lead Plaintiff and his counsel faced substantial obstacles in proving liability and damages, yet nevertheless reached a timely and substantial resolution for the Settlement Class.

The Settlement was not achieved easily. Defendants were represented by highly skilled litigators, and Plaintiff's Counsel faced numerous hurdles and risks from the outset, including the heightened pleading standards and automatic discovery stay of the PSLRA, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment. These are not idle risks. "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation); *see also Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process."). Indeed, "[t]he court needs to look no further than its own order dismissing the ... litigation to assess the risks involved." *In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005); *see also* ECF No. 64. Nor do the risks end at the pleading stage. Even when a plaintiff is successful at trial, payment is not guaranteed. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion in securities action after 13 years of litigation on loss causation grounds and error in jury instructions).

Despite facing long odds, Plaintiff's Counsel vigorously pursued this case for more than

2

two years.  *See generally* ¶¶30-54, 59-75.  Among other things, Plaintiff's Counsel:

- Conducted a thorough investigation of the claims asserted in the Action, which included an in-depth review and analysis of: (i) Groupon's SEC filings, press releases, investor conference calls, and other public statements; (ii) publicly available documents, announcements, and news articles concerning Groupon; and (iii) research reports prepared by securities analysts regarding Groupon; as well as interviews with former employees witnesses with relevant information, and consultation with accounting, market efficiency, and loss causation and damages experts;

- Drafted the initial complaint in the Action, as well as two comprehensive and detailed amended complaints—including the 69-page Second Amended Complaint ("SAC")— based on Plaintiff's Counsel's extensive investigation;

- Engaged in substantial briefing related to Defendants' motion to dismiss and Lead Plaintiff's successful motion for leave to file the SAC;

- Engaged in discovery, which included, *inter alia*, researching and drafting initial disclosures; propounding and responding to discovery requests and interrogatories; negotiating an agreed confidentiality order and a protocol to govern the production of electronically stored information and other documents; serving seven subpoenas *duces tecum* on third-parties; meeting and conferring with counsel for Defendants and third-parties; obtaining, reviewing and analyzing more than 23,300 documents (approximately 90,000 pages) obtained from Defendants and five third-parties; and interviewing Groupon's Vice President of Finance prior to executing the Stipulation;

- Exchanged documents and mediation briefs containing detailed analyses of the strengths, risks, and potential issues in the litigation with Defendants, participated in an unsuccessful full-day mediation session with an experienced neutral, and engaged in several days of further negotiations that culminated in a mediator's recommendation to resolve the Action for $13,500,000 in cash for the benefit of the Settlement Class;

- Worked with Lead Plaintiff's market efficiency expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly; and

- Drafted the Stipulation and related exhibits, as well as the preliminary approval and final approval briefs.  *See* ¶¶30-54.

As compensation for their considerable efforts on behalf of the Settlement Class, Plaintiff's Counsel seek an award equal to 33⅓% of the Settlement Fund and reimbursement of out-of-pocket litigation expenses in the amount of $250,227.53.  The requested fee award is reasonable and consistent with the market rate for fees regularly awarded in class action settlements within the Seventh Circuit.  Moreover, although "[a] lodestar cross-check is not required in this Circuit[,]" (*Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *13 (S.D. Ill. Dec. 16, 2018)), the

3

requested fee award equates to a multiplier of 1.54 which is well within the range of multipliers that are commonly awarded in complex class actions with substantial contingency risks such as this one. *See* ¶¶95-98, 103 (lodestar/multiplier analysis).

For these reasons, as well as those set forth below and in the Joint Declaration, Lead Counsel submit that the requested attorneys' fees are fair and reasonable under the applicable standards and should be awarded by the Court. The Litigation Expenses requested by Plaintiff's Counsel and the Lead Plaintiff are likewise reasonable and the expenses were necessarily incurred in the successful prosecution of the Action. Accordingly, they too should be approved.

## II. THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE AND WARRANT COURT APPROVAL

### A. Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Seventh Circuit has held that "[w]hen a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) ("*Florin I*"); *see also Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (the "common fund doctrine" is "based on the equitable notion that those who have benefited from litigation should share in its costs").

### B. The Requested Attorneys' Fee Award Should Be A Percentage Of The Fund

The Seventh Circuit is unique among federal circuits in that it requires district courts to replicate the market for legal services when it sets fees in class actions. *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) ("[A]ttorneys' fees in class actions should

4

approximate the market rate that prevails between willing buyers and willing sellers of legal services."); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") ("We have held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services . . . .").

Although courts within this Circuit "have discretion to choose either the lodestar or the percentage method of calculating fees" in common fund cases (*In re Trans Union Corp. Privacy Litig.*, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009)), the Seventh Circuit has strongly endorsed the percentage of the fund method because it most closely approximates the manner in which attorneys are compensated in the marketplace for contingent work. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'"); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis."). Indeed, the prevailing, if not exclusive, method of compensating class counsel is by a contingent fee arrangement: "The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *Florin I*, 34 F.3d at 565, quoting *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992).

The Seventh Circuit has also recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin I*, 34 F.3d at 566; *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572-73 (noting that it is easier to award a percentage "than it would be to hassle over every item or category of hours and expenses and what multiple to fix and so forth"). And they have likewise acknowledged the many

5

disadvantages of the lodestar method. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) ("*Synthroid II*") (noting that the lodestar method creates the "incentive to run up the billable hours"). Given the goal of trying to mimic the market, and the pros and cons of each method, it is no surprise that "[i]n a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *3, *5 (S.D. Ind. Sept. 4, 2019); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844, 859 (N.D. Ill. Feb. 20, 2015) (finding that the percentage method has "emerged as the favored method for calculating fees in common-fund cases in this district").[4]

Accordingly, Lead Counsel respectfully submit that the Court should award attorneys' fees based on a percentage of the common fund obtained.[5]

**C.      The Requested Fee Award Is Fair And Reasonable Under Applicable Seventh Circuit Factors**

When considering the reasonableness of a requested fee award, the Seventh Circuit "has consistently directed district courts to do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 718; *Sutton*, 504 F.3d at 692. In applying this standard, courts in the Seventh Circuit consider the following factors: (1) "awards made by courts in other class actions"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case."

---

[4] *See also Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 637 (7th Cir. 2011) (affirming district court award and its finding that a "pure percentage fee approach best replicated the market for ERISA class action attorneys."); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("we have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach.").

[5] Use of the percentage method in the context of securities fraud cases is further supported by the text of the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005).

*Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005); *Synthroid I*, 264 F.3d at 721 ("The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case."). These factors strongly support the requested fee award.

### 1.    A 33⅓% Award Is Consistent With Seventh Circuit Authority

"[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court." *Taubenfeld*, 415 F.3d at 600. In complex class action cases like this one, courts within the Seventh Circuit have held that percentages in the range of 33⅓% to 40% of the recovery are appropriate. *See Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33⅓% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ("A customary contingency fee would range from 33⅓% to 40% of the amount recovered."); *Hale*, 2018 WL 6606079, at *10 ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.3% or higher to counsel in class action litigation.").[6]

In addition to finding awards of one-third or more reasonable, courts in the Seventh Circuit—including this Court—have repeatedly granted such awards in complex contingency fee litigation such as this one, including in cases with much larger recoveries. *See Young v. Cty. of Cook*, 2017 WL 4164238 at *2 (N.D. Ill. Sept 20, 2017) (one-third of $32.5 million fund); *Hale*, 2018 WL 6606079, at *13, *16 (one-third of $250 million settlement); *Beesley v. Int'l Paper Co.*,

---

[6] *See also Swift v. Direct Buy, Inc.*, 2013 WL 5770633, at *8 (N.D. Ind. Oct. 24, 2013) (the "payment of 33% of the common fund is widely accepted by the Seventh Circuit as a reasonable fee in a class action."); *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 11, 1995) ("courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery.").

2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014) (awarding 33.3% of $30 million settlement); *Retsky*, 2001 WL 1568856, at *3 (awarding 33.3% of $14 million settlement); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (awarding 33% of $62 million settlement); *Abante Rooter and Plumbing, Inc. v. Oh Ins. Agency*, 2019 WL 10248700, at *4 (N.D. Ill. Dec. 10, 2019) (awarding one-third of $10.5 million settlement).[7] Accordingly, this factor supports the requested fee award. *See Heekin v. Anthem, Inc.*, 2012 WL 5878032, at *5, n.3 (S.D. Ind. Nov. 20, 2012) (awarding 33.3% of $90 million fund in securities class action, plus expenses; collecting cases and stating that "there is support from other cases in this Circuit and nationally to support a percentage market rate of 33.3%."); *Hale*, 2018 WL 6606079, at *8 (noting that the empirical evidence shows "sophisticated clients and sophisticated class representatives regularly agree to pay 33.33% or more in risky, complex litigation, even when potential rewards are very large.").

Moreover, the requested fee is reasonable under the Seventh Circuit's articulated assessment in *Redman v. RadioShack Corp*, 768 F.3d 622, 630 (7th Cir. 2014). In *Redman*, the Seventh Circuit held that "the ratio that is relevant to assessing the reasonableness of the attorneys' fees ... is the ratio of (1) the fee to (2) the fee plus what the class members received." *Id*. Accordingly, the ratio should exclude the cost of administering the settlement and the value of any *cy pres* award. *Id.* at 768; *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014). Here, the Settlement Amount is $13.5 million; the requested attorneys' fee is $4,500,000; the requested reimbursement of expenses (including the award for Lead Plaintiff) is $255,227.53; the estimated claims administration fees are $275,000; and the *cy pres* award is expected to be negligible. ¶¶ 106-07, 111; Ex. 1 at ¶23. The *Redman* ratio, then, is (1) $4,500,000 to (2) $12,969,772.47,[8]

---

[7] *See also* Ex. 9 (collecting Seventh Circuit cases with 33% or higher fee awards).
[8] $13,500,000 − $275,000 − $255,227.53 = $12,969,772.47.

or 34.7%, which is certainly within the range of reasonableness. *See Sanchez v. Roka Akor Chicago LLC*, 2017 WL 1425837, at *6 (N.D. Ill. Apr. 20, 2017) (approving a request of fees equal to "effectively 39.5% of the common fund" after applying the *Redman* ratio).

### 2. The Quality Of Legal Services Rendered And The Amount Of Work

The "market price for legal fees depends . . . in part on the quality of [the firm's] performance, [and] in part on the amount of work necessary to resolve the case." *Sutton*, 504 F.3d at 693. From the inception of the Action, Plaintiff's Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement Class. This case required an in-depth investigation, a thorough understanding of Groupon's business model, comprehensive knowledge of the securities laws, significant work with experts, and the skill to respond to a host of legal and factual issues raised by Defendants at every step of the litigation. *See* ¶¶30-54, 61-62, 66-67, 70. Plaintiff's Counsel spent over 4,623.15 hours of attorney and paraprofessional time investigating the claims, working with experienced investigators, drafting detailed amended complaints, opposing Defendants' motion to dismiss, conducting discovery, consulting with outside accounting and financial experts, and preparing for and participating in a full-day mediation session that included further briefing by the Parties. And, during settlement negotiations, Plaintiff's Counsel demonstrated their willingness to continue litigating rather than accept a settlement that was not in the best interest of the Settlement Class. Indeed, the Settlement was only obtained as a result of a mediator's proposal after the Parties were unable to reach agreement on an appropriate settlement value. Plaintiff's Counsel's diligent efforts, as well as their skill and expertise, enabled them to overcome significant hurdles—including the dismissal of the case— and to negotiate an excellent result for the Settlement Class. Plaintiff's Counsel's hard work on this litigation, and the high caliber of that work, supports Plaintiff's Counsel's request. *See Hale*, 2018 WL 6606079, at *10.

9

The quality of opposing counsel is also important in evaluating the value of Plaintiff's Counsel's work. *See, e.g.*, *Beesley*, 2014 WL 375432, at *2 ("[l]itigating this case against formidable defendants and their sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and determination."). Plaintiff's Counsel was opposed in this Action by counsel from Skadden, Arps, Slate, Meagher & Flom LLP, a firm with a reputation for vigorous advocacy in the defense of complex civil cases. Notwithstanding this opposition, Plaintiff's Counsel were able to develop their case and persuade Defendants to settle on terms favorable to the Settlement Class. Accordingly, the quality of the representation supports the requested fee award.

### 3. The Market Rewards Risk, And This Case Was Tremendously Risky

As noted by the Seventh Circuit in *Synthroid I*, "the market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear." 264 F.3d at 721; *see also Silverman,* 739 F.3d at 958 ("The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). "Thus, [w]hen determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit." *Hale*, 2018 WL 6606079, at *8. Indeed, as the Seventh Circuit has emphasized, "court[s] must also be careful to sustain the incentive for attorneys to continue to represent such clients on an inescapably contingent basis." *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995) ("*Florin II*"). In applying this factor, "risk is to be assessed as of the time of the inception of the litigation." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1208 (N.D. Ill. 1989).[9]

Here, Plaintiff's Counsel undertook the Action on a fully contingent basis, assuming the significant risk that the litigation would yield no recovery and leave them uncompensated. Unlike

---

[9] *See also Florin I,* 34 F.3d at 565 (directing district court to determine fair attorneys' fees in class action by considering the probability of success at the outset of litigation).

defense counsel, who are typically paid an hourly rate and regularly reimbursed for their expenses, Plaintiff's Counsel have not been compensated for *any* time or reimbursed for any of their out-of-pocket expense since this case began over two years ago. ¶106. And the risks in this case were not illusory; rather, they were very real from the time it was initiated, and they continued throughout the litigation—as evidenced by the Court's dismissal of the First Amended Complaint. ECF No. 64; *see also* Ex. 8 (*Securities Class Action Filings: 2020 Year in Review* (Cornerstone Research 2021 at p. 18 (Fig. 17)) ("Recent annual dismissal rate have been closer to 50%."). Leaving aside the many obstacles to recovery inherent in a complex securities fraud class action—including, but not limited to, the PSLRA's heightened pleading standard and automatic stay of discovery (15 U.S.C. § 78u-4(b)(3)(B))—this was a particularly unattractive and highly risky case.[10]

"One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *Dairy Farmers*, 80 F. Supp. 3d at 848. "This inquiry provides insight into whether class counsel benefitted from the work of others, which acts a red flag for judges assessing fee petitions." *Id.* In the instant case, there was no public governmental or journalistic investigation of any sort. Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015).

Moreover, this was not a financial restatement case. When companies restate their financials, they are admitting a material misstatement of their financial reporting. A case predicated on a restatement is, therefore, less risky because the misstatement and materiality

---

[10] *See Silverman*, 739 F.3d at 958 (observing that "Defendants prevail outright in many securities suits."); *see also In re Xcel*, 364 F. Supp. 2d at 994 ("[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

11

elements of a securities fraud claim are already met. *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744 at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement); *In re Xcel*, 364 F. Supp. 2d at 995 (noting that one of the many hurdles plaintiffs faced was the fact that the case did not involve a restatement of financials).

Plaintiff's Counsel's assumption of this contingency fee risk, and the extensive litigation of the Action in the face of these risks, strongly supports the reasonableness of the requested fee. *See Taubenfeld,* 415 F.3d at 600 (approving requested fee and noting that "lead counsel was taking on a significant degree of risk of nonpayment with the case.").

### 4. The Stakes Of The Action Favor The Requested Fees

The Court should also consider the "stakes of the case" in assessing a reasonable attorneys' fee award. *Synthroid I*, 264 F.3d at 721. By virtually any metric, this was high stakes, complex litigation. Defendants faced a multi-million dollar claim and were vigorous participants in this litigation. Likewise, the sum of Settlement Class Members' total losses was significant, estimated by Plaintiff's Counsel to be as high as $140 million. Plaintiff's Counsel also had a great deal at stake, with the risk of non-payment for their $2,925,315.75 in lodestar and the burden of advancing $250,227.53 in out-of-pocket costs, which would only be recouped if they were successful. Consequently, the "stakes of the case" support the requested fee. *See Heekin*, 2012 WL 5878032, at *5; *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) ("stakes in the case are high given the size of the Class, the scale of the challenged activity, the complexity and costs of the legal proceedings, and the amount of money involved.").

### 5. Reaction Of The Settlement Class Supports The Requested Award

Pursuant to the Court's July 6, 2022 Preliminary Approval Order, the Claims Administrator mailed 8,647 copies of the Notice to potential Settlement Class Members and nominees informing

12

them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund and up to $350,000 in Litigation Expenses. *See* Ex. 1-A (Notice) at ¶5. While the deadline to file objections has not yet passed, to date, not a single objection to any aspect of the Settlement, including the fee and expense request, has been received. *See Spano v. Boeing Co.*, 2016 WL 3791123, at *1 (S.D. Ill. Mar. 31, 2016) ("This Court finds the lack of any significant number of objections to be a sign of the Class's overwhelming support for Class Counsel's request.").

### 6. The Fee Request Is Supported By Lead Plaintiff

Fadi E. Rahal, who was appointed by the Court pursuant to the PSLRA to serve as lead plaintiff because he had the largest financial interest of any lead plaintiff movant in the Action (ECF No. 41), entered into a contingent fee agreement with Lead Counsel Kirby McInerney LLP that provided for attorneys' fees—subject to Court approval—of up to 33⅓% of any recovery, plus expenses. ¶100. Moreover, Mr. Rahal supports Lead Counsel's application for a 33⅓% fee award. *See* Ex. 2, at ¶¶9-10. Accordingly, this factor weighs in favor of the requested fees.

### D. The Requested Fee Is Also Reasonable Using the Lodestar Method

Although the Seventh Circuit does not mandate use of a lodestar calculation as a secondary measure of reasonableness when the percentage-of-the-recovery approach is employed, *see Rohm & Haas Pension Plan*, 658 F.3d at 636 ("consideration of a lodestar check is not an issue of required methodology"), Plaintiff's Counsel's requested attorneys' fees are also reasonable under the lodestar method. As detailed in the Joint Declaration, Plaintiff's Counsel spent 4,623.15 hours of attorney and other professional time prosecuting the Action for the benefit of the Settlement Class, amounting to a lodestar of $2,925,315.75. ¶¶97-98; Exs. 3-5.

Accordingly, the requested fee of 33⅓% of the Settlement Fund, which equates to $4,500,000 (before interest), represents a multiplier of approximately 1.54 on Plaintiffs' Counsel's

13

lodestar. *¶*103. The requested 1.54 multiplier is well within the range of multipliers commonly awarded in comparable complex litigation. *See, e.g.*, *Spano*, 2016 WL 3791123, at *3 ("In risky litigation such as this, lodestar multiplier can be reasonable in the range between 2 and 5"); *Hale*, 2018 WL 6606079, at *14 (lodestar cross-check approving 2.83 multiplier); *see also Lowry v. RTI Surgical Holdings, Inc.*, 20 C. 01939 (MFK) (N.D. Ill. Jan. 26, 2022) (ECF No. 115) (approving fee application resulting 3.10 multiplier); ¶103 (gathering cases).

## III. PLAINTIFF'S COUNSEL'S EXPENSES SHOULD BE REIMBURSED

"It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses; and mediation." *Beesley*, 2014 WL 375432, at *3; *see also Synthroid I*, 264 F.3d at 722.

Here, Plaintiff's Counsel incurred at total of $250,227.53 in out-of-pocket litigation expenses. ¶¶106-107. The expenses, and a categorization thereof, are attested to in each individual firm's declaration (Exs. 3-5), and totaled by category for the Court's convenience in the Joint Declaration. ¶107. The expenses are the types reimbursed by individual clients in the marketplace, are below the amount set forth in the Notice sent to potential Settlement Class Members, were necessary for the successful prosecution of the Action, and are reasonable in amount. They should, therefore, be reimbursed from the common fund. *See Abbott*, 2015 WL 4398475, at *4; *Beesley*, 2014 WL 375432, at *3.

## IV. LEAD PLAINTIFF SHOULD BE AWARDED HIS COSTS AND EXPENSES

Class representatives are permitted to recover unreimbursed costs (including the cost of time spent) while serving on behalf of the class. 15 U.S.C. § 78u-4(a)(4). Courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs

14

to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at \*10 (S.D.N.Y. Oct. 24, 2005).

Lead Plaintiff Fadi E. Rahal respectfully requests reimbursement in the amount of $5,000. Mr. Rahal, among other things, participated in regular discussions with Lead Counsel concerning the prosecution of the Action, the strengths and weaknesses of the claims, and potential settlement; reviewed all significant pleadings filed with the Court; reviewed Court orders and discussed them with Lead Counsel; consulted with Lead Counsel regarding settlement negotiations; responded to discovery, including by producing documents; and evaluated and approved the proposed Settlement. Ex. 2, at ¶5. The time it took to engage in these tasks is time that could have been devoted to other personal or professional activities, and they are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at \*21 (S.D.N.Y. 2009). Moreover, the amount requested is consistent with awards in other complex cases.[11]

Accordingly, Lead Counsel respectfully request that the Court approve the award. *See Bell*, 2019 WL 4193376, at \*6 ("Without [Plaintiff's] commitment to pursuing these claims, the successful recovery for the Class would not have been possible.").

## V.     CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court grant the fee and expense application.

---

[11] *See Lowry v. RTI Surgical Holdings, Inc.*, 20 C. 01939 (MFK) (N.D. Ill. Jan. 26, 2022) (ECF No. 115) (awarding $5,000 to lead plaintiff); *Will v. Gen. Dynamics Corp.,* 2010 WL 4818174, at \*4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 to each of three named plaintiffs); *Cook*, 142 F.3d at 1016 (upholding award of $25,000 to class representative); *Heekin*, 2012 WL 5878032, at \*1 ($25,000 awards to two representatives); *see also In re Signet Jewelers Limited Sec. Litig.*, 2020 WL 4196468, at \*23-24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff).

Dated: September 8, 2022

Respectfully Submitted,

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Leanne H. Solish*
Robert V. Prongay
Kara M. Wolke
Joseph D. Cohen
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
kwolke@glancylaw.com
jcohen@glancylaw.com
lsolish@glancylaw.com

**KIRBY MCINERNEY LLP**
Thomas W. Elrod
Andrew M. McNeela
Ira M. Press
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Email: telrod@kmllp.com
amcneela@kmllp.com
ipress@kmllp.com

*Co-Lead Counsel for Lead Plaintiff*

**POMERANTZ LLP**
Louis C. Ludwig
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Email: lcludwig@pomlaw.com

*Liaison Counsel for Lead Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

*s/ Leanne H. Solish*
Leanne H. Solish
