**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAZAR MACOVSKI, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-02581 |
| Plaintiff, | Honorable Matthew F. Kennelly |
| v. | |
| GROUPON, INC., RICH WILLIAMS, and MELISSA THOMAS, | |
| Defendants. | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR CLASS DISTRIBUTION ORDER**

**TABLE OF CONTENTS**

I.     BACKGROUND ................................................................................................. 1

II.    CLAIMS ADMINISTRATION ........................................................................ 2

III.   LATE BUT OTHERWISE ELIGIBLE CLAIMS ............................................ 4

IV.   DISTRIBUTION OF NET SETTLEMENT FUND .......................................... 6

V.    RELEASE OF CLAIMS ................................................................................... 7

VI.   THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES ................................................................. 8

VII.  RECORDS RETENTION AND DESTRUCTION ........................................... 8

VIII. CONCLUSION ................................................................................................. 8

i

## TABLE OF AUTHORITIES

CASES

*Hartman v. Powell*,
  No. 00-5356, 2001 WL 410461 (D.C. Cir. Mar. 15, 2001) .......................................................... 6

*In re "Agent Orange" Prod. Liab. Litig.*,
  689 F. Supp. 1250 (E.D.N.Y. 1988) ........................................................................................ 5

*In re Citigroup Inc. Sec. Litig.*,
  No. 09-MD-2070 (SHS), 2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ................................... 6

*In re Gypsum Antitrust Cases,*
  565 F.2d 1123 (9th Cir. 1977) ....................................................................................... 4, 5, 6

*In re Medicis Pharm. Corp. Sec. Litig.*,
  2013 WL 12149720 (D. Ariz. Mar. 8, 2013) ............................................................................ 8

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  246 F.3d 315 (3d Cir. 2001)..................................................................................................... 5

Court-appointed Lead Plaintiff Fadi E. Rahal respectfully submits this Memorandum of Law in support of his Unopposed Motion for Class Distribution Order ("Motion") in the above-captioned Action.[1] If entered by the Court, the Class Distribution Order will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Mahn Declaration. *See* Mahn Decl., ¶45.

## I.     BACKGROUND

On June 24, 2022, the Parties entered into the Stipulation, the terms of which established a $13,500,000 Settlement Fund for the benefit of the Settlement Class. Subject to certain exclusions, the Settlement Class consists of all persons and entities who or that, between July 30, 2019, and February 18, 2020, inclusive (the "Settlement Class Period"), purchased or otherwise acquired Groupon common stock and were damaged thereby.

The Court granted preliminary approval of the Settlement on July 6, 2022. *See* ECF No. 113 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator mailed 45,145 Notice Packets to potential members of the Settlement Class, published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated June 24, 2022 (ECF No. 110-1) (the "Stipulation"), or the concurrently-filed Declaration of Jessie Mahn in Support of Lead Plaintiff's Motion for Distribution of Class Settlement Funds ("Mahn Declaration" or "Mahn Decl."), submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator").

*PR Newswire* (a national newswire service), established a case-specific website dedicated to this Settlement (www.GrouponSecuritiesSettlement.com (the "Settlement Website")), and set up a toll-free telephone helpline. *See* Mahn Decl., ¶¶5-8. The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form. *Id.*, ¶7.

On October 28, 2022, the Court entered an order granting final approval of the Settlement ("Final Approval Order"), finding the Settlement fair, reasonable, and adequate. ECF No. 127. That same day, the Court also entered an order approving the Plan of Allocation, which was explained in the Notice and also posted on the Settlement Website, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund. ECF No. 128.

Lead Counsel now respectfully request that the Court authorize distribution of the Net Settlement Fund (after payment of the Claims Administrator's expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants. Importantly, to date, no claimant has disagreed with the Claims Administrator's administrative determination of deficiencies or ineligibility. Mahn Decl., ¶¶30-31. Likewise, Defendants do not oppose this motion.

## II.     CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail or online, postmarked or received by no later than December 1, 2022. *See* Preliminary Approval Order, ¶10. The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient, the Claims Administrator notified the Claimant of the deficiency and advised the

2

Claimant as to possible ways to cure the deficiency. *See* Mahn Decl., ¶¶12-29.

Of the 4,405 Claims submitted to, and fully processed by, the Claims Administrator, 426 were paper submissions or online submissions through the online filing component on the Settlement Website. *Id.*, ¶12. The remaining 3,979 Claims were Electronic Claims. Electronic Claims filers are typically banks, brokers, nominees and other-third party filers, who file claims on behalf of numerous claimants. *Id.*, ¶16. Because the Electronic Claim filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides Electronic Claim filers with the opportunity to either mail a computer disc or electronically submit a file containing all the transactions of the Claimants on whose behalf the Electronic Claim filer is submitting a Claim. *Id.* This process is designed to expedite the claims process. *See id.*

If a Claim was deficient or defective, the Claims Administrator sent a Deficiency Notice, a sample of which is attached as Exhibit B to the Mahn Declaration. *Id.*, ¶25 and Ex. B. The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶25. Of the 426 paper and online Claims, the Claims Administrator sent Deficiency Notices for 335 Claims (or approximately 79%). *Id.*, ¶24.

Similarly, for deficient Electronic Claims, the Claims Administrator sent an email with an attached Transaction Report, a sample of which is attached as Exhibit C to the Mahn Declaration. *Id.*, ¶¶27-28 and Ex. C. The Transaction Report advised the Claimant that he, she, or it had twenty (20) days to submit additional information to cure the Claim, or else the Claims Administrator would recommend the Claim for rejection. *Id*. The Transaction Report also detailed the deficiencies related to individual transactions and/or entire Electronic Claims. *Id.* Of the 3,979 Electronic Claims, 2,607, or approximately 65%, were deficient or ineligible. *Id.*, ¶27. The Claims

Administrator worked diligently with Claimants to resolve deficiencies where possible and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, after the deficiency process was complete, the Claims Administrator determined that 1,221 Claims are acceptable, in whole or in part, and should receive a distribution. Mahn Decl., ¶¶38-40, Ex. D. This number includes 841 timely and acceptable or partially acceptable Claims, and 380 Late But Otherwise Eligible Claims (addressed in Section III below). *Id.*, ¶¶32, 38 and Exs. D-1 and D-2. The total Common Stock Recognized Loss amount is $61,344,590.79.[2] *Id.*, ¶40 and Exs. D-1 and D-2. The Claims Administrator also determined that 3,184 Claims are not eligible and should be rejected for the following reasons: (i) 711 Claims did not result in a Recognized Claim under the Plan of Allocation; (ii) 1,203 Claims did not fit the definition of the Settlement Class; (iii) 73 Claims had uncured deficiencies; (iv) 6 Claims were duplicates; and (v) 1,191 claims were withdrawn or voided by request.[3] *Id.*, ¶42 and Ex. D-3.

## III. LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the December 1, 2022 claims filing deadline. Although the Claims Administrator attempts to accept all eligible Claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the

---

[2] The Common Stock Recognized Loss amount breakdown is $40,223,379.76 for timely valid Claims, and $21,121,211.04 for Late But Otherwise Eligible Claims. *Id.*, ¶40 and Exs. D-1 and D-2.

[3] Of the Claims withdrawn or voided by request, 1,179 Claims were submitted by a nominee with post-split data instead of pre-split data as required by the Plan of Allocation. The nominee withdrew these 1,179 Claims and replaced them with the correct, pre-split data. *Id.*, ¶42 n.2.

4

distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of May 31, 2023.

Of all the 4,405 Claims submitted, 1,248 were received or postmarked after the December 1, 2022 deadline, but on or before the Claims Administrator's imposed cut-off date of May 31, 2023. Mahn Decl., ¶32. Of these 1,248 Claims, 380 are otherwise eligible ("Late But Otherwise Eligible Claims"). *Id.* These Late But Otherwise Eligible Claims have been recommended for payment. *Id.* Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Claim Forms, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that the Court permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Mahn Decl., ¶¶32, 38-40, and Ex. D-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims or responses to a deficiency letter received after May 31, 2023 be included in the

5

distribution. *Id.*, ¶¶33, 45(d). "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, No. 09-MD-2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## IV.    DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an Initial Distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more. *See* Mahn Decl., ¶45(a) and Ex. A (Notice) at ¶¶57, 60. Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly. To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." Mahn Decl., ¶45(a)(iv).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution checks. However, if after nine (9) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, Lead Counsel in consultation with the Claims Administrator will determine if it is cost-effective to have the Claims Administrator conduct a second distribution ("Second Distribution"). Mahn Decl., ¶45(b) and Ex. A (Notice) at ¶66. During the Second Distribution, any amounts remaining in the Net Settlement Fund, after

payment of, or reserve for, Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. Mahn Decl., ¶45(b). Following the Second Distribution, additional redistributions will occur following the same process as the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines additional distributions are no longer economically feasible. *Id.*, ¶45(c).

At such time Lead Counsel, in consultation with the Claims Administrator, determines that further distribution of the funds remaining in the Net Settlement is not cost-effective, after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to a non-sectarian, not-for-profit organization to be recommended by Lead Counsel and approved by the Court. The proposed Class Distribution Order filed herewith provides for the redistribution and disposition of any funds remaining in the Net Settlement Fund following the Initial Distribution.

## V.  **RELEASE OF CLAIMS**

It is also respectfully requested that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel,

Liaison Counsel, additional Plaintiff's Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to the terms of the Distribution Order. *See In re ITT Educational Services, Inc. Sec. Litig. (Indiana),* Dkt. No. 114, Case No. 1:14-cv-01599-TWP-DML (S.D. Ind. Nov. 21, 2017); *In re Medicis Pharm. Corp. Sec. Litig.*, 2013 WL 12149720, at \*2 (D. Ariz. Mar. 8, 2013).

## VI. THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total fees and expenses charged by the Claims Administrator in this matter are $184,166.73, which has been paid. Mahn Decl., ¶¶43-44, Ex. E (compilation of Claims Administrator's invoices). The estimate to conduct the Initial Distribution is $16,216.25. *Id.*, ¶44. Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $16,216.25 in anticipation of the work that will be performed for the Initial Distribution.[4] *Id.*

## VII. RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff respectfully requests that the Court order that: (a) in no less than one (1) year after the final distribution of the Net Settlement Fund, or, if there are no additional distributions, two (2) years after the Initial Distribution, the Claims Administrator may destroy the paper and electronic copies of the Claims and all supporting documentation. *Id.*, ¶46.

## VIII. CONCLUSION

For all of the above reasons, Lead Plaintiff respectfully requests that the Motion be granted.

---

[4] If the anticipated fees and expenses to conduct the Initial Distribution are greater than the actual cost to conduct the distribution, the excess will be returned to the Settlement Fund. *Id.*

Dated: July 27, 2023

Respectfully Submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:  /s/ *Leanne H. Solish*
Robert V. Prongay
Kara M. Wolke
Joseph D. Cohen
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
        kwolke@glancylaw.com
        jcohen@glancylaw.com
        lsolish@glancylaw.com

**KIRBY MCINERNEY LLP**
Ira M. Press
Thomas W. Elrod
Andrew M. McNeela
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: (212) 371-6600
Email: ipress@kmllp.com
        telrod@kmllp.com
        amcneela@kmllp.com

*Co-Lead Counsel for Lead Plaintiff*

**POMERANTZ LLP**
Louis C. Ludwig
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Email: lcludwig@pomlaw.com

*Liaison Counsel for Lead Plaintiff*

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

*s/ Leanne H. Solish*
Leanne H. Solish
